REMINGTON, Appellant, vs. EASTERN RAILWAY COMPANY OF MINNESOTA and another, Respondents.

*December 10, 1900 — February 26, 1901.*

*Reference: Setting aside findings: Appeal: Partnership: Attorneys at law: Compensation: Unauthorized settlement of debt by one partner: Concealment: Collusion with debtor: Notice: Interest: Demand: Judgment: Mandate on appeal.*

1. Findings of fact by a referee should not be disturbed by the trial court, or by the supreme court on appeal, unless they are against the clear preponderance of the evidence.
2. In an action by one member of a firm of attorneys against a railway company to recover for services rendered by the firm, the other

partner being made a defendant because he refused to join as plaintiff and claimed that he had settled for such services in an agreement for his future employment by the company upon a monthly salary, the evidence is *held* insufficient to warrant the trial court in setting aside findings of the referee that the defendant partner fraudulently concealed from the plaintiff the fact that he had released the company from liability for said services; that the general counsel of the railway company aided and abetted him in such concealment; and that the value of said services was $25 per day.

3. Settlement by one partner will not conclude the firm, if obviously unreasonable, or if the consideration, other than money, moves primarily to the personal benefit of the settling partner. In such cases the opposite party is so chargeable with notice of want of authority that he is held to act subject to the actual consent or approval of the absent partner.

4. It is unreasonable for one member of a firm of attorneys, without the consent of his copartner, to release a claim of the firm for $2,200, for an indefinite, momentarily terminable agreement to pay the settling partner a salary of $200 per month for future services — a sum not shown to be substantially in excess of the probable reasonable value of such services — especially where the partner so employed might terminate the partnership at will.

5. Where, according to the arrangement between attorney and client, no time was fixed for payment for services except as statements were rendered, interest would not begin to run on such a claim until a demand was made.

6. Where one partner settles a firm debt without authority and under such circumstances as not to conclude the other partner, the latter, in an action against his copartner and the debtor, should have judgment for the entire amount of the debtor's liability, limited as to collection and enforcement, however, to such sum as he is entitled to receive, as between himself and his copartner, from the assets of the partnership, inclusive of such judgment.

7. Where the entry of such a judgment has been directed by the supreme court on appeal, it is the duty of the trial court to enter judgment at once for the full amount of the debtor's liability. Execution of that judgment, however, is entirely within the control of the trial court, and any steps by way of accounting, which may be necessary to render its enforcement and execution equitable, are within its inherent power, and no specific directions to that end are necessary in the mandate.

APPEAL from a judgment of the superior court of Milwaukee county: ORREN T. WILLIAMS, Judge. *Reversed.*

Plaintiff and defendant *Murphy*, lawyers, were copartners under the firm name of Murphy & Remington from November 24, 1894, up to September 18, 1896. As such, up to January 1, 1896, they were employed in various matters by defendant *The Eastern Railway Company of Minnesota*, and, among other things, throughout said period were employed for the defense of two important suits for timber damage resulting from fire, the damages claimed being about $56,000 in each case, in which a large amount of work had been done and not paid for. Defendants claim that on or about January 13, 1896, the firm entered into an agreement with the *Eastern Railway Company* whereby *Murphy* was employed for an indefinite period, commencing January 1, 1896, as local attorney at Superior, upon a fixed salary of $200 a month, in consideration whereof any liability of the company for unpaid services in the fire cases was settled and satisfied. It is conceded that plaintiff consented that *Murphy* should make a new arrangement by which the compensation for services rendered for the company after January 1, 1896, should be a monthly salary, and that that agreement might be in form between the two defendants, it being agreed between him and *Murphy* that he was to share therein. Plaintiff claims that *Murphy* stated the salary so agreed upon at $150, and did not disclose to him the fact that there was included in such arrangement any settlement of past indebtedness or liability. He also claims that there was in fact no such agreement, but that the two defendants subsequently colluded to assert and establish that fact, or, if there was any such agreement between them, that it was secret and collusive and intentionally withheld from plaintiff's knowledge. No accounting or settlement of the affairs of the firm of Murphy & Remington has been had, and the plaintiff joins *Murphy* as defendant because he refuses to

join as plaintiff. The recovery sought is the reasonable value of the services in those fire cases.

Upon trial before a referee, he found the rendition of the services to the extent of 104 days, and that only the retainer and thirteen and one-half days thereof had been paid; which findings were confirmed by the court, and the confirmation not excepted to by respondents. He found the value of the services at $25 a day, and the balance due $2,262.50; also that defendant *Murphy* did agree, in consideration of a promise to pay him $200 per month for such services as he might render as attorney, that no further compensation should be made for past services in the fire cases, which agreement was made collusively by both defendants, in fraud of the existing partnership and the rights of plaintiff; that *Murphy* withheld from plaintiff all knowledge of such stipulation of settlement, and also deceived him with the information that the salary was to be only $150 per month, and that the railway company aided and abetted said *Murphy* in such fraudulent concealment; and, as conclusions of law, held that the agreement of settlement was not binding; that the plaintiff, on behalf of the firm of Murphy & Remington, was entitled to recover $2,262.50, the enforcement of the judgment to be limited, however, to the amount which should be actually due plaintiff as between himself and *Murphy*.

The court, upon hearing on this report, modified the same to the extent merely of holding that *Murphy* was expressly authorized to make an agreement for a salary, and that he also had general authority to make the agreement for settlement; that the amount of the salary was not correctly stated by *Murphy* to the plaintiff, but that plaintiff received $75 per month as one half of the amount of the salary as stated by *Murphy*. He repudiated the finding of collusion between *Murphy* and the railroad company, or existence of any facts to impeach its validity, but, impliedly at least, confirms the finding of the referee that plaintiff

never had any knowledge thereof. The court accordingly concluded, as matter of law, that no cause of action existed in favor of plaintiff against the *Eastern Railway Company*, and that the form of the action did not justify the court in proceeding to an adjustment of the partnership accounts between plaintiff and *Murphy*, and entered judgment dismissing the action on the merits, from which plaintiff appeals.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *F. H. Remington* and *J. G. Flanders*. To the point that *Murphy*, as a partner, had no authority to make the settlement alleged, they cited *Blewett v. Gaynor*, 77 Wis. 391; *Cotzhausen v. Judd*, 43 Wis. 213; *Seaman v. Ascherman*, 57 Wis. 547, 553; 1 Lindley, Partnership (Ewell's ed.), \*237–\*239; 17 Am. & Eng. Ency. of Law (1st ed.), 1038, and cases cited; *Lee v. Hamilton*, 12 Tex. 413; Story, Agency, § 98; *Niemann v. Niemann*, 43 Ch. Div. 198; *Russell v. Green*, 10 Conn. 269–279; *Bergland v. Frawley*, 72 Wis. 559; *Smith v. Sloan*, 37 Wis. 285; *Davis v. Dodson*, 29 L. R. A. 496; *Woodruff v. Scaife*, 83 Ala. 152; *Battle v. Street*, 85 Tenn. 282; *Walcott v. Canfield*, 3 Conn. 194; *Clements v. Norris*, 8 Ch. Div. 129; *Moynahan v. Prentiss*, 10 Colo. App. 295; *Marsh v. Gold*, 2 Pick. 285; *Worster v. Forbush*, 171 Mass. 423; *Schellenbeck v. Studebaker*, 13 Ind. App. 437; 1 Bates, Partnership, § 368.

*Charles Quarles*, of counsel for the respondent *Eastern Railway Company of Minnesota*.

The following opinion was filed January 8, 1901:

Dodge, J. After a most careful examination of the evidence, we are unable to find justification for the action of the court below in setting aside the three important findings of the referee: first, that defendant *Murphy* concealed from his partner, *Remington*, the fact that he had released defendant company from any liability for work done in the fire cases in consideration of the agreement to pay him a

salary; second, that defendant company's general counsel, Grover, well knew of the partnership relation, and aided and abetted defendant *Murphy* in fraudulently withholding from plaintiff knowledge or information of the terms of the agreement made between them; and, thirdly, that the reasonable value of the services of the firm for said defendant company was $25 per day. To such findings must be accorded, both by the circuit court and here, the same weight and effect, in conclusively settling fair controversies over mere questions of fact, that by the oft-declared practice of this court is given to the findings of a court before which the issues are primarily tried. The facts found must be taken to exist, unless they are contrary to the clear preponderance of the evidence, to such an extent, indeed, as to force "conviction that the evidence did not receive proper consideration by the trial court [referee] through mistake in overlooking material portions thereof or from prejudice or some other cause." *Zoesch v. Thielman,* 105 Wis. 117; *Johnson v. Goult,* 106 Wis. 247; *Wyss v. Grunert,* 108 Wis. 38.

. It may be that a fair construction of the court's order impliedly confirms the finding of the referee that *Murphy* did conceal from his partner the condition of settlement contained in his salary agreement; for it is stated that *Murphy* did not correctly state to plaintiff the amount of salary to be received. Now, the only evidence on the subject of any information to the plaintiff, either as to the amount of salary or as to the condition of settlement, is that of *Murphy,* of a specific conversation in which he claims to have given both pieces of information, and the view, evidently taken by the court, that this testimony was not true, we think indicates concurrence with the referee in the conclusion that *Murphy* did not have the conversation and did conceal the fact of settlement. Whether, however, this construction of the court's finding be correct or not, the evidence that *Remington* was kept in ignorance both that the salary was $200,

and that there was any agreement to settle the compensation in the fire cases, is abundant to justify the finding.

As to the question of confederation between Grover, general counsel of defendant company, and *Murphy*, to accomplish this concealment, the evidence is all circumstantial, as is almost inevitable. It consists, first, in the character of the agreement itself, which is one obviously likely to be highly objectionable to the plaintiff. Thereby, if valid, his interest in a claim to the amount of about $1,100 was canceled and abandoned in consideration of a promise to pay, not to him but to *Murphy*, an amount shown to be by no means unreasonably large, even as compensation for expectant services,— a promise in the benefits of which he might not share more than a single month, as the partnership between him and *Murphy* might have been terminated at any time. It is an entirely legitimate inference from this circumstance alone that, if both *Murphy* and Grover were silent afterwards, such silence was preconcerted between them. Good faith and reasonable courtesy, nay reasonable caution, would have led Mr. Grover either to insist on the submission of the agreement to *Mr. Remington*, or to inquire of him as to its satisfactoriness. The making of this agreement was followed by many months of silence, and, when inquiry was specifically made at Mr. Grover's office, the same falsehood as to the amount of salary which *Murphy* had told was repeated by Mr. Grover's chief clerk in a letter for which he does not assume responsibility, but which he did not take occasion to correct or repudiate when it came to his knowledge. Like repetition of this same erroneous amount is sworn by a disinterested witness to have been made by Mr. Grover to him a few months later. The fact that Grover made use of the same fictitious figure in his statement of the salary as that which *Murphy* had made before presents, at least, a striking coincidence from which a tribunal vested with the trial of facts might legitimately

draw inference of concerted action between them.  There
is, too, some evidence of the falsification of Mr. Grover's
correspondence files by the interpolation therein of a subse-
quently prepared letter, bearing upon its face at the time of
its examination evidence of having been written long sub-
sequent to its ostensible date.  If this were believed, the in-
ference of collusion would be almost irresistible.  Other cir-
cumstances might be referred to, but these were sufficient
to justify the referee, having present before him as witnesses
both *Murphy* and Grover, in drawing the inference of col-
lusion to withhold knowledge from plaintiff of the surrender
of his rights.  Whether, as an original proposition, we should
have drawn the same inferences and reached the same con-
clusion is a question not before us for consideration, but
merely whether the simple denial by the accused parties so
overwhelmingly preponderates in probative force over the
circumstances and conduct as to justify a reversal of the
findings of the referee on a question of fact.  That question
must be answered in the negative, and the contrary answer
by the circuit court was erroneous.

 With reference to the finding upon the value of services,
which the court sets aside without substituting any finding
of his own in its place, it must be borne in mind that both
the referee and court have found, without exception by de-
fendant, that plaintiff performed 104 secular days of labor,
by means of which services the rights of defendant *Eastern
Railway Company* in said cases were in all respects fully
protected and well taken care of, and that in that behalf
plaintiff and the defendant *Murphy*, as attorneys of record
in those cases, fully and thoroughly performed their duties
in a lawyer-like manner, of which only the retainer and
thirteen and one-half secular days' labor have been paid for.
These facts, therefore, are verities in the case.  Plaintiff
himself testified that the services were, in his opinion, of
the reasonable value of $4,665.  Four witnesses, experi-

enced lawyers, were called on to testify to a hypothetical question, in response to which they fixed values ranging from $4,500 to $7,000. Upon cross-examination, eliminating certain criticised elements of this hypothetical question, and presenting the circumstances which defendant claims should reduce the amount of recovery, those witnesses place the services, one at $35 per day, and the other three at from $3,000 to $4,000. Against this is the evidence of *Mr. Murphy*, which is devoted principally to the denial of the rendition in fact of the services, and is rendered largely immaterial by the absence of exception to the findings above mentioned. He estimates the value of their services, in excess of those paid for specifically, at from $400 to $500. The bills rendered from time to time for services in these cases were at the rate of $15 to $20 per day. In the light of this evidence, it cannot be said that there is any overwhelming preponderance of the evidence to show that the value found by the referee was too great, nor can we feel justified in saying, notwithstanding the considerable amount of expert opinion evidence, that there is sufficiently overwhelming preponderance to justify us in disregarding that finding and fixing a higher amount, for which action plaintiff strenuously contends. The question of the value of professional services is one as to which opinion evidence is not conclusive, especially when the tribunals which try such question consist of lawyers, themselves presumably capable of exercising judgment and forming opinions as to value from the various facts and circumstances established, the exact details, bearing, and weight of which were best capable of appreciation by the referee. *Crosthwaite v. U. S.* 30 Ct. Cl. 300, 310; *Jordan v. Swift I. & S. Works*, 13 Ky. Law Rep. 970; *Hansen v. Martin*, 63 Cal. 282; *Cullom v. Mock*, 21 La. Ann. 687; *Halaska v. Cotzhausen*, 52 Wis. 624.

We are satisfied that the findings of the referee should not have been disturbed, but should be accepted as correctly

expressing the facts on which the rights of the parties must be decided.

Independently of the express finding of collusion between the defendants as a fact, there can be no doubt of the correctness of the conclusion of law, drawn by the referee and repudiated by the court, that the release of the firm's claim for services in the fire cases is invalid as against *Remington*, under the rules laid down by this court. Settlement by one partner will not conclude the firm, if obviously unreasonable, nor if the consideration therefor, other than money, moves primarily to the personal benefit of the settling partner. In either such case the opposite party is so chargeable with notice of want of authority that he is held to act subject to the actual consent or approval of the absent partners. *Sauntry v. Dunlap*, 12 Wis. 364; *Viles v. Bangs*, 36 Wis. 131; *Cotzhausen v. Judd*, 43 Wis. 213; *Blewett v. Gaynor*, 77 Wis. 378, 391. The settlement here relied on involves both defects. It is unreasonable to release a legitimate claim of $2,200 for an indefinite, momentarily terminable agreement to pay a salary of $200 per month for future services, which sum is not shown to be substantially in excess of a prospective estimate of the reasonable value of such services. True, respondents urge that the amount earned by services for the railway company the preceding year had amounted to only about $140 per month, but they seem to overlook the fact that in that figure was not included the services in the fire cases which, as now found, would increase the amount to something over $300 per month. Especially unreasonable does this settlement appear when it is remembered that any benefit to be derived by plaintiff from such salary was subject, not only to the company's option to terminate the employment at any time, but also to *Murphy's* option to terminate the partnership at will. The latter consideration is, however, even more cogent as establishing a surrender by *Murphy* of the partnership rights for a benefit moving exclusively to himself, to the knowl-

edge of the firm debtor,— a fact which, in the light of the authorities cited, must be held to render the settlement void as against plaintiff, unless he concurred therein.

We are convinced, therefore, that the conclusion reached by the referee that the respondent railway company is still liable for the amount ascertained was correct, and that refusal to enter judgment accordingly was error, except as to the interest date adopted by the referee. . Under the custom and arrangement between the defendant company and Murphy & Remington, there was no time fixed for payment, except as statements were rendered. The claim here involved was not fully liquidated, though, under the weight of authority, it was capable of liquidation by reference to reasonably certain standards of value for professional services. *Yates v. Shepardson*, 39 Wis. 173; *Farr v. Semple*, 81 Wis. 230; *Laycock v. Parker*, 103 Wis. 161, 187. Interest, therefore, should not run until a demand was made "sufficiently specific to inform the debtor of the claim made, so that he can ascertain therefrom the amount he ought to pay by application of the standard above set forth." *Laycock v. Parker*, 103 Wis. 188. There is no evidence of any demand until this suit was commenced, itself constituting one. Interest, therefore, should be computed only from that date instead of January 1, 1896, the date adopted by the referee.

Upon the authority of *Blewett v. Gaynor*, 77 Wis. 378, judgment should be entered against the defendant railway company for $2,262.50, with interest from the commencement of this action, limited as to collection and enforcement, however, to such sum as plaintiff is entitled to receive, as between himself and *Murphy*, from the assets of their partnership, inclusive of such judgment.

*By the Court.*— Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.

BARDEEN, J., took no part.

The following opinion was filed February 26, 1901:

PER CURIAM. The appellant moves this court for an amendment of the mandate so as to direct immediate entry, docket, and execution of judgment for costs, and further direction that the judgment to be entered contain provision for an accounting between plaintiff and defendant *Murphy*, to ascertain the amount which the former is entitled to receive from the assets of their partnership.

It is not considered that any amendment of the mandate is necessary to accomplish the principal purpose of this motion. Under that mandate, it is the duty of the superior court to enter judgment at once for the full amount of the liability of the defendant *Eastern Railway Company of Minnesota* to the firm of Murphy & Remington, as declared in the opinion. The execution of that judgment is entirely under the control of the court rendering it, and any steps in the way of accounting, on reference or otherwise, which may be necessary to render its enforcement and execution equitable, are within the inherent power of the superior court, upon motion. *Stein v. Benedict*, 83 Wis. 603; *Zinc Carbonate Co. v. First Nat. Bank*, 103 Wis. 125; *Johnson v. Huber*, 106 Wis. 282, 283. For this reason, the appellant's motion is denied.