WISCONSIN GAS & ELECTRIC COMPANY, Respondent, vs. RAILROAD COMMISSION OF WISCONSIN and another, Appellants.

*December 8, 1928—January 8, 1929.*

For the appellants there were briefs by the *Attorney General, Suel O. Arnold,* assistant attorney general, and *Geo. L. Mooney,* attorney for the city of Plymouth, and oral argument by *Mr. Arnold* and *Mr. Mooney.*

For the respondent there was a brief by *Shaw, Muskat & Sullivan* of Milwaukee, and oral argument by *James D. Shaw.*

ROSENBERRY, J. Many questions are presented and pressed here in briefs of counsel and upon the oral argument which we find it unnecessary to consider in this case. As pointed out in the decision of the trial court, the sole question at issue here is the validity of the order of the railroad commission ousting the plaintiff company from the town of Plymouth so far as local service is concerned. It will not be necessary to determine what the rights of the defendant city are, because whatever they are they are in no way drawn in question in this case.

The facts as found by the trial court and that appear from the record to be practically undisputed are : the city of Plymouth purchased in 1901 from one Wheeler, then the owner, its present water and light plant and has ever since that time owned and operated it. At the time of the purchase in 1901 the utility was furnishing electric light service to one Eastman over a line built to his home, about thirty-five feet of the line being beyond the city limits of the city of Plymouth. From 1901 to 1917 the city of Plymouth did not extend its lines beyond its corporate limits. Persons residing beyond the city limits desiring to receive service from the city of Plymouth's electric light plant were required to construct their own lines to the city limits, provide transformers, and service was given such persons as provided themselves with the means of receiving it. These customers were situated as were the complainants in the case of *Schumacher v. Railroad Comm.* 185 Wis. 303, 201 N. W. 241. During and after 1917 the city of Plymouth acquired and constructed lines outside of its corporate limits in the town of Plymouth and at the time of the trial had forty-five miles of line serving 210 customers. It was then prepared to and

did meet the demands for service made upon it. The city of Plymouth never obtained a formal permit from the town of Plymouth to construct its lines within the town.

The Milwaukee & Fox River Valley Railway Company, a Wisconsin corporation, hereinafter called the Fox River Company, was organized about 1910 as an electric railway. It was also authorized to operate electric utilities along its line. The Elkhart Lake Light & Power Company, a Wisconsin corporation, hereinafter called the Elkhart Company, had authority to operate electric utilities. The Elkhart Company took over the electric system of the Fox River Company. The name was changed to that of Badger Public Service Company, hereinafter called the Badger Company, and during the early part of 1928 the Badger Company was merged with the plaintiff company. No question is raised but that the plaintiff company succeeded to all the properties, rights, powers, privileges, and duties of the other three named corporations. The Fox River Company began the construction of an electric distribution system about 1910 and extended the same about one and one-half miles into the town of Plymouth, Sheboygan county, Wisconsin. During 1911 a number of customers were served by this system, which was further extended during 1913 and later, and from time to time additional consumers were served until the number reached between thirty and forty. In March, 1919, the Elkhart Company filed with the commission a rural rate in the town of Plymouth. In November, 1927, the Badger Company was granted a written permit to construct its lines on certain designated highways in the town of Plymouth, which permit was approved by the county board of Sheboygan county. It further appears that for some years the city of Plymouth and the Badger Company constructed and used certain poles jointly.

The claim of the defendant city that it has a prior right under an indeterminate permit to render exclusive service to

the people of the town of Plymouth as a public utility hangs entirely upon the fact that at the time it purchased the utility in question the utility was serving and thereafter continued to serve Mr. Eastman by a drop cord which extended beyond the limits of the city into the town of Plymouth. The defendant city can base no claim to an indeterminate permit on account of services to other customers in the town of Plymouth prior to 1917 because it required them to come to the city limits to receive its service. It did exactly what it was necessary for it to do in order to prevent itself from becoming a public utility operating in the town of Plymouth. The evidence fails to disclose by whom or under what circumstances the extension to the home of Mr. Eastman was made. It was at best an equivocal act. The city placed its own construction upon it. The city, by requiring other residents of the town of Plymouth to build lines to the city limits in order to receive service, quite definitely took the stand that it was not obligated to render electric service in the town of Plymouth. If the circumstances were reversed and a city furnishing utility service had inadvertently stepped over the city boundaries to render a very slight service at practically no expense, and we were asked to hold that it was thereby obligated to serve the entire town although the city had no intention of entering the town as a public utility, it would require a most strained and unnatural interpretation of the facts and the law to so hold.

We do no more in this case than to determine as the trial court determined that the city has no such exclusive right to render utility service within the town of Plymouth as authorized the railroad commission to make the order of April 6, 1928.

*By the Court.*—Judgment appealed from is affirmed.