CITY OF MILWAUKEE, Respondent, vs. CITY OF WEST ALLIS, Appellant.

*October 11, 1940—January 7, 1941.*

For the appellant there were briefs by *Lines, Spooner & Quarles* of Milwaukee, special counsel for the city of West Allis, and *John C. Doerfer,* city attorney of West Allis, attorneys, and *Louis Quarles* and *Maxwell H. Herriott* of Milwaukee, and *Laurence C. Gram* of West Allis of counsel, and oral argument by *Mr. Quarles, Mr. Herriott,* and *Mr. Gram.*

For the respondent there were briefs by *Walter J. Mattison,* city attorney of Milwaukee, and *Ronald A. Drechsler,* assistant city attorney, and oral argument by *Mr. Drechsler.*

The following opinion was filed November 8, 1940:

FOWLER, J.   This suit was commenced October 9, 1935, to recover the reasonable value over six cents per hundred cubic feet which West Allis had paid for the service rendered by Milwaukee to West Allis in supplying it with water since January 1, 1930.

In 1905 a contract was entered into between the parties whereby Milwaukee was to furnish West Allis with water for

a compensation of six cents per hundred cubic feet, and the latter, then a village, was to distribute the water to its inhabitants and charge the consumers therefor. In 1926 Milwaukee filed with the commission a schedule of rates whereby consumers outside the city of Milwaukee were to pay ten cents per hundred cubic feet, and this schedule was approved by the commission. West Allis had been paying Milwaukee at the contract rate of six cents ever since the making of the contract and has continued such payment to the present time. On August 27, 1928, Milwaukee sued West Allis to recover the difference between the six cents paid and the ten-cent rate fixed for outside users, and West Allis in 1929 sued Milwaukee to enjoin it from cutting off its supply of water. Milwaukee kept billing West Allis for water furnished at the ten-cent rate and applying the six-cent payments on account to July 1, 1932, when Milwaukee voluntarily reduced the rate to outside users to nine cents per hundred cubic feet, and has since billed West Allis at that rate, but without any cost study, and this rate was approved by the commission as to outside users other than West Allis.

The previous actions were terminated pursuant to decision of this court reported in *Milwaukee v. West Allis,* 217 Wis. 614, 258 N. W. 851, 259 N. W. 724. The two actions were tried together. In the first action the circuit court judgment went for West Allis on the ground that the contract rate of six cents governed recovery up to the time of the trial. This judgment was affirmed by this court. In the second suit Milwaukee was enjoined by the circuit court judgment from collecting more than the contract rate and from discontinuing service. This judgment was reversed by this court on the ground that the contract was properly terminated by Milwaukee on January 1, 1930, and that the contract rate governed only to that time. This court directed the circuit court to dismiss the West Allis action "for want of equity" and left the recovery of Milwaukee for service rendered after termination of the contract "subject to further litigation if the parties be so advised."

Opinion on rehearing, page 621. This action is such further action. It was suggested in the opinion of this court, pages 619, 620, that from the time of the termination of the contract, Milwaukee could recover on *quantum meruit* if the service was worth more than the price paid, "unless precluded on other grounds." It was also suggested in the opinion that in absence of a schedule covering the service to West Allis it was "the duty of the water department of the city of Milwaukee to file its schedule covering the service [rendered to West Allis] with the . . . (now public service commission) whereupon the reasonableness of the rate so fixed, if in dispute, . . . [might] be determined in proceedings had pursuant to the public utility law," and this rate would "cover service to be rendered in the future."

The former suit of *Milwaukee v. West Allis,* above referred to, which will be hereinafter referred to only as "the former suit," was commenced in August, 1928. It was brought to recover at a ten-cent rate for service from June 20, 1926, to the time of commencement of the action. Before the action came to trial a supplemental complaint was filed alleging a change in rate from ten to nine cents on June 30, 1932. The prayer was for compensation at those rates. The basis of the ten-cent rate was that on July 20, 1926, Milwaukee filed with the railroad commission, now public service commission, hereinafter referred to as "the commission," a new rate schedule, which was approved by the commission on December 9, 1926. The basis of the nine-cent rate was stated in a supplemental complaint that on June 30, 1932, Milwaukee filed with the commission a rate of nine cents, which was also approved by the commission. The ten-cent rate was included in a general schedule reading: "The charges for metered water . . . for water furnished for any purpose beyond the city limits, there shall be a uniform charge of ten cents per hundred cubic feet, equal to thirteen and one-third cents per one thousand gallons." The schedule filed on June 30, 1932, was also general and read the

same except nine cents was substituted for ten cents per hundred cubic feet and twelve cents for thirteen and one-third cents per thousand gallons.

It was held by this court in the former suit that these scheduled rates were not "intended to apply to consumers being furnished under contracts," Opinion, page 619, and therefore did not apply to West Allis. These rates not applying to West Allis there was no schedule that did apply to West Allis after the termination of the contract between the two municipalities.

This brings us to the point of stating just what the present suit is. The original complaint herein merely alleges that Milwaukee furnished to West Allis a specified quantity of water from January 1, 1930, to June 30, 1932, which was reasonably worth ten cents per hundred cubic feet during said period, and another specified quantity from June 30, 1932, to April 4, 1935, which was reasonably worth nine cents per hundred cubic feet during said period, plus a service charge of $2 for each quarter during the entire period, for which the defendant had only paid a specified sum, and demands judgment for the difference between the aggregate of the alleged reasonable worth and the sum paid, with interest at six per cent. By supplemental complaint, plaintiff alleges continuation of the furnishing of water up to January 1, 1939, and up to the time of trial, reasonably worth nine cents per hundred cubic feet, and that the council of West Allis on May 7, 1935, adopted a resolution expressing willingness to pay for the water furnished after April 1, 1935, at such rate as the commission should eventually determine the lawful permanent rate to be, provided that if the commission should fix a less permanent rate than six cents the defendant should have credit for the difference between six cents and the rate fixed, and offering to pay, pending the determination by the commission, specified sums for the second, third, and fourth quarters of 1935, and provided further that the commission did not set an emergency rate to be paid pending its determination of a permanent rate.

The case came to trial before the circuit court without a jury, and on November 6, 1939, the court found that the reasonable value of the furnishing of the water was ten cents from January 1, 1930, to July 1, 1932; from July 1, 1932, to December 31, 1935, eight and a half cents; and from January 1, 1936, to June 30, 1939, eight cents per hundred cubic feet. The court also found a payment of less than six cents per hundred cubic feet for one quarter amounting to $240. Judgment was entered for the difference between the reasonable value found by the court and the amount paid with interest at six per cent from the 20th of the month following each quarterly billing on the amount unpaid for the preceding quarter, a total of $546,016.95 and costs of $107.20.

The defendant claims that the circuit court erred in proceeding at all to determine the reasonable value of the water furnished; that, Milwaukee being a public utility, the charge for rendering service can only be fixed under the provisions of the utility law. The plaintiff claims that the decision of this court in the former case required the circuit court to proceed as it did.

In our opinion in the former case, page 620, it is stated that Milwaukee, being a public utility, and the contract between the parties having been terminated, "in the absence of a schedule covering the service rendered to parties situated as . . . [was] the city of West Allis, it . . . [was] the duty of the water department of the city of Milwaukee to file its schedule covering the service [to West Allis] with the . . . commission . . . whereupon the reasonableness of the rate so fixed, if in dispute, . . . [might] be determined according to the public utility law. This will cover service to be rendered in the future." This, although hardly within the issues of the case, is plainly enough correct, as inspection of the utility law discloses. By that law, originally enacted in 1907, public utilities surrendered their franchises, and accepted indeterminate permits and thereafter could only recover such rates as were fixed pur-

suant to its provisions. The law is the same with few exceptions not material as when enacted. Ch. 499, Laws of 1907, was carried into the statutes of 1911 as secs. $1797m$—1 to $1797m$ —108 and is contained in the statutes of 1933 in force when the former case was decided as ch. 196. Sec. 196.19 (1), Stats. 1933, provided that every public utility should file with the commission schedules of the rates charged, which rates and schedules should not be higher than those charged April 1, 1907. Sec. 196.20 (2) provided that no increase in rates should be made without approval of the commission. Two days after the decision by this court in the former case Milwaukee filed with the commission a rate of nine cents for West Allis. From this it is clear that the circuit court's determination of the rate to be paid by West Allis after the decision of the former case was erroneous, unless it is saved by the principle of *res judicata*. That it is not so saved would seem from the phrase "unless precluded on other grounds" in the quotation from this court's opinion above given stating that Milwaukee could recover on *quantum meruit*.

But in saying that Milwaukee could recover in a subsequent action on *quantum meruit* the opinion was *res judicata* only if the matter of such recovery was within the issue raised by the pleadings. That issue was not so raised. The only question raised by the pleadings was whether Milwaukee could recover the rates scheduled for outside customers as Milwaukee claimed or whether it could recover only the contract rate as West Allis claimed. This court, on the motion for rehearing, was asked by Milwaukee to change its mandate because, as Milwaukee contended, under the opinion Milwaukee could recover nothing at all for water furnished after the contract was terminated. This court rejected that contention and refused to change the mandate. The court in its opinion on rehearing, page 621, expressly held: "The mandate must stand. The city sued, claiming that it was entitled to ten cents under the

order of the . . . commission. The city of West Allis de-
fended on the ground that the water was furnished under the
contract. No other issue was presented by the pleadings."
We are of opinion that the question of recovery of reasonable
value was not within the issues of the former case, and the
statement of our opinion that Milwaukee could recover on
*quantum meruit* is not *res judicata,* and therefore not binding
upon the parties or the circuit court. The plaintiff also re-
lies in support of the proposition that action on *quantum
meruit* lies on *Quarles v. City of Appleton* (7th Cir.), 299
Fed. 508. Recovery was sought in that case for water fur-
nished to the city by a water company during a period prior to
the enactment of the utility law by the state, and for another
period subsequent to the enactment of that law and the ac-
ceptance by the company of an indeterminate permit thereun-
der. The holding of the federal court as to recovery during the
former period is entirely beside the instant case. As to recov-
ery after the utility law went into effect the court held that
between a period elapsing between the application of the utility
to the commission to fix a rate and the fixing of the rate by the
commission, the utility was entitled to recover the reasonable
value of the service. It also held that from the institution of
proceedings before the commission for taking over the prop-
erty by the city under the utility law and the time when the
property was taken over by the city from the utility the utility
was entitled to recover the reasonable value of the service ren-
dered. In so determining the court was influenced by the fact
that before the adoption of the utility law the water company
had endeavored to increase the rate, and threatened that unless
the rate it proposed was paid it would refuse to furnish water
to the city. The twenty-year franchise originally granted by
the city to the company had expired. The city had thereupon
brought action to enjoin the shutting off of the water, and in
its complaint had stated its willingness to pay the reasonable

value of the service rendered, and an injunction had issued. The opinion does not mention any of the provisions of the utility law relating to compensation under that law, or refer to the law at all except to mention its enactment and the proceedings thereunder. The decision was apparently made without consideration of those provisions and went on general principles of equity that would in the opinion of the court have obtained in absence of those provisions. No question of want of due process or other federal question was involved. This court is the judge of the substantive and statutory law of the state in the absence of federal question, and of the rights thereunder of litigants before it. *Erie Railroad Co. v. Tompkins,* 304 U. S. 64, 58 Sup. Ct. 817, 82 L. Ed. 1188, 114 A. L. R. 1487. The federal case cited is therefore not authority, either as precedent or by force of its reasoning.

The defendant contends that if Milwaukee cannot recover on *quantum meruit* it cannot recover at all. We will consider first the question of recovery from January, 1930, up to the termination of the former suits.

The defendant's claim in this respect is that recovery must rest on the utility law and that under the provisions of that law there can be no recovery. More specifically the defendant's claim is that there can be no recovery under the utility law for service furnished by a utility until the utility has filed with the commission a schedule of rates for that service, and that no rate for service to West Allis was on file with the commission from January 1, 1930, when the contract was terminated until April 4, 1935, two days after the final decision of this court in the former case. Milwaukee contends that the ten and nine-cent rates applicable to outside consumers heretofore referred to, which were on file with the commission from January 1, 1930, and June 30, 1932, respectively, both of which were approved by the commission, constitute sufficient basis for recovery at those rates.

This might well be but for the decision in the former case that those rates did not apply to West Allis. The decision recites in that respect as follows, page 619:

"A consideration of the record and particularly the order of 1929 makes it certain beyond question that this rate was not intended to apply to consumers being furnished under contracts. As to the contract rates, the railroad commission at all times deemed itself without jurisdiction to revise such rates. To now hold that a rate fixed for ordinary consumers who were permitted to connect with the city waterworks system and so take water beyond the city limits should now be applied to contracts prescribing a different rate, seems absurd under the circumstances."

The holding above quoted was within the issues of the former case. The issue was, as stated by the court in the opinion filed on the motion for rehearing:

"The city [Milwaukee] sued, claiming that it was entitled to ten cents under the order of the . . . commission. The city of West Allis defended on the ground that the water was furnished under the contract. No other issue was presented by the pleadings."

The holding of the former case that the orders of the commission fixing rates for outside users did not apply to West Allis is *res judicata*.

There being no recovery on those rates the defendant contends that under the decision in *Kilbourn v. Southern Wisconsin Power Co.* 149 Wis. 168, 135 N. W. 499, and the statutes therein cited, which obtained in 1935 and still obtain, there can be no recovery at all until such time as a rate is filed with the commission and approved by it. That case is to the point that where a contract for the furnishing of electric current is made which is void as against the public policy of the utility law, and the utility has furnished power ostensibly under the contract, and has failed to file with the commission a schedule of rates for the furnishing of service, the utility

cannot only not recover the reasonable value of that service but cannot recover anything at all. The basis of the *Kilbourn* decision was four sections of the 1911 statutes cited therein, now covered by sections of the Wisconsin statutes next below referred to which provide as there stated.

Sec. 196.19 (1), Stats. Every utility shall file with the commission a rate for every service rendered, and such rate, inferentially as to utilities in existence in 1907, shall not in the first instance be greater than the rate existing on April 1, 1907.

Sec. 196.20 (2), Stats. No change increasing rates shall be made except on approval by the commission after investigation and hearing.

Sec. 196.22, Stats. It shall be unlawful for any utility to receive greater compensation than is specified in the rate on file with the commission; or any rate not specified in any schedule.

The defendant utility involved in the *Kilbourn Case, supra,* was created after 1907. The decision of that case held that as to such a corporation it was up to it to file a rate and get it approved by the commission, and that unless it did there was no schedule rate and there could be no recovery until it filed one.

The defendant argues that by parity of reason when the contract was terminated there was no existing rate, and it was then up to Milwaukee to file one which could not be higher than the six-cent contract rate. Milwaukee did not so do, and therefore cannot recover for the service rendered before it filed such a rate. Perhaps the analogy should not be carried quite so far. But regardless of not first filing a rate not higher than six cents, Milwaukee filed no rate at all until April 4, 1935, there was no rate in force until that time, and Milwaukee can recover nothing for water furnished before that time. We consider that West Allis is not liable for anything in excess of the six cents it paid until April 4, 1935.

The defendant contends that the only rate Milwaukee could properly file under the statute on April 4, 1935, was a six-cent rate and as it did not file such rate it is precluded from recovery since that date as well as before. In the view we take of the acts of the parties after April 4, 1935, we need not consider this contention.

The commission on April 28, 1939, finally acted on the schedule filed by Milwaukee on April 4, 1935. It appears from the recitals in the order of the commission then made that on April 4, 1935, there were pending before the commission several complaints of consumers alleging unfair rates; that on April 13th Milwaukee asked that the hearing the city was seeking in the West Allis matter be conducted in connection with the hearings on the other complaints, and that at a hearing on April 27, 1935, called "to justify the filing of a nine-cent rate for the city of West Allis," the city attorney of West Allis agreed to the request of the city attorney of Milwaukee made on the 13th of April; that on April 27th Milwaukee requested an adjournment of the hearing until it should be in position to justify its rates to all outlying communities; that the matter was "postponed to a date to be set later because the city of West Allis and the city of Milwaukee have agreed that this is to become a part of the general investigation and are in the process of negotiating agreement as to the payment of charges from April 1, 1935, and that the city of West Allis agrees to pay the city of Milwaukee for water furnished from and after April 1, 1935, to the effective date of the commission's order on the basis of the rate which the commission will determine as a result of the foregoing hearing, subject to the right of either party to appeal from the order" of the commission.

That such was the agreement of the parties before the commission is corroborated in a letter from the city clerk of West Allis, dated May 11, 1935, inclosing a resolution of the common council of West Allis. The resolution recited that West

Allis "is willing to pay such rate as is eventually determined to be the lawful rate for such service from and after April 1, 1935," and resolved that it would "pay, pending determination of the said rate" a specified amount for the "second," "third," and "fourth quarters" of 1935. The first quarter of that year was manifestly considered as covered by its payment of $19,185.20 on a bill submitted covering Milwaukee's claim at nine cents as the reasonable rate up to March 31, 1935. This payment was for the billed quantity for that quarter at six cents instead of nine cents as claimed by Milwaukee. The resolution accompanying the letter further provided that in case the lawful rate was found to be less than six cents West Allis should have credit in future bills for the excess over the lawful rate that it had paid in the meantime. The resolution recited that it was adopted on condition that no interim or emergency rate should be set for the commission pending final determination for a permanent rate schedule by the commission.

There was no reply to this letter, or formal action by Milwaukee upon the promise of West Allis incorporated in the resolution. But the situation disclosed is that Milwaukee was claiming nine cents as the reasonable rate West Allis was obligated to pay after the filing of the nine-cent rate with the commission and at ten and nine cents before the time of its filing back to January 1, 1930, when the contract was terminated, and that West Allis, although claiming that nothing was due from January 1, 1930, to April 1, 1935, was willing to pay what the commission should determine to be the lawful rate upon final conclusion of the proceedings before the commission. The commission went ahead with its investigation on the understanding that both parties had agreed to payment pending the proceedings according to its determination. We consider that both parties should be bound by the agreement made by the counsel before the commission. It is comparable to a stipulation made in open court, acted upon by the

court. Such stipulation binds both parties according to its terms. See 60 C. J., title "Stipulations," §§ 1, 8.

We see no reason why a stipulation made before the commission is not of equal solemnity with one made in court and should not be held of equal force. We consider that West Allis is bound by its stipulation stated. The stipulation having been made before the commission, both parties were bound by it, and it is immaterial that Milwaukee did not reply to the letter of West Allis inclosing the copy of its resolution. The stipulation having been made, West Allis had no power to change it without the consent of Milwaukee.

The defendant claims that the prolongation of the hearing before the commission resulted from an application of the plaintiff for delay, and the plaintiff is estopped from claiming any advantage through the delay in its determination of the rate for West Allis. Assuming, but not deciding, that this would follow if the delay had been objected to by the defendant, the record shows that the defendant agreed to the broad survey and investigation proposed by the commission that resulted in the delay. Having so consented the defendant cannot claim estoppel.

The trial court held that the plaintiff was entitled to interest on the amount found due and unpaid for each quarter from the twentieth of the month following the end of the quarter. The custom followed by the parties was that Milwaukee submitted bills quarterly at all times after April 1, 1935, at the nine-cent rate it claimed recoverable by reason of its posting that rate with the commission as the reasonable worth of the service rendered. West Allis paid on each bill submitted at the rate of six cents. West Allis claims that interest on the unpaid portion is not recoverable because the amount payable was unliquidated and could not be determined with reasonable certainty. Milwaukee claims that interest at the legal rate is recoverable because the amount payable, that is the amount based on the rate eventually determined by the commission to

be the permanent rate, was ascertainable by inquiry as to the amount being paid by other outside municipal users whose situation was similar to that of West Allis. Both parties cite in support of their contentions *Laycock v. Parker,* 103 Wis. 161, 79 N. W. 327, and *Necedah Mfg. Co. v. Juneau County,* 206 Wis. 316, 237 N. W. 277, 240 N. W. 405, 96 A. L. R. 4. The plaintiff cites in addition *Remington v. Eastern R. Co.* 109 Wis. 154, 84 N. W. 898, 85 N. W. 321, in which interest was allowed in an action to recover the value of legal services; *Bagnall v. Milwaukee,* 156 Wis. 642, 146 N. W. 791, and *Voigt v. Milwaukee County,* 158 Wis. 666, 149 N. W. 392, in which interest was allowed on the reasonable value of land affected by condemnation proceedings; and *Milwaukee v. H. Neidner & Co.* 220 Wis. 185, 263 N. W. 468, 265 N. W. 226, 266 N. W. 238, in which interest was allowed in an action to recover the cost of replacing defective tiling installed under a contract. The thing for which recovery is allowable herein, as above indicated, is the reasonable value of the service rendered by Milwaukee, not that value as fixed by the court, but that value as fixed by the commission.

As a matter of abstract reasoning the defendant seems to have rather the better of the argument. In view of the facts that the plaintiff claimed nine cents as the reasonable value, that the commission had approved nine cents as the reasonable value for similar services to other outside users, that the defendant claimed six cents as the reasonable value, and that the commission ultimately fixed about six and a half cents as the reasonable value of the unfiltered water, it would seem rather more speculative than approximately ascertainable what the reasonable value would be as ultimately determined by the commission. But we consider that under the circumstances involved, logic so far as it appears, should yield to practicality. The reasonable value of the service here involved ultimately found would seem to be as ascertainable as the future determination by a jury of the reasonable value of legal services, as

the amount a jury would ultimately fix in condemnation proceedings, or as the injury to the property involved in the *Necedah Mfg. Co. Case, supra,* would ultimately be found to be. The defendant agreed to pay at the rate the commission should ultimately fix. Its payments fell short of that amount. Not having paid enough, it must pay the deficiency, and having had the use of the deficiency it should pay interest on it; and as the legal rate of interest applies in absence of a rate fixed by agreement and no rate having been agreed upon, the legal rate is the rate it must pay.

*By the Court.*—The judgment of the circuit court is reversed, and the record remanded with direction to enter judgment for the plaintiff as indicated in the opinion.

A motion for a rehearing was denied, with $25 costs, on January 7, 1941.