CITY OF MILWAUKEE, Appellant, vs. PUBLIC SERVICE COMMISSION and another, Respondents.

*September 18—October 13, 1942.*

For the appellant there was a brief by *Walter J. Mattison,* city attorney, and *Joseph L. Bednarek,* assistant city attorney, and oral argument by *Mr. Bednarek.*

For the respondent Public Service Commission there was a brief by the *Attorney General,* and *Newell S. Boardman* and *H. T. Ferguson,* assistant attorneys general, and oral argument by *Mr. Ferguson.*

For the respondent town of Milwaukee there was a brief by *C. R. Dineen,* attorney, and *James E. McCarty* of counsel, both of Milwaukee, and oral argument by *Mr. Dineen.*

WICKHEM, J.   By order of the Public Service Commission, plaintiff city of Milwaukee was required to extend its water service in the town of Milwaukee to certain described premises in the town.   Plaintiff, (1) denies the jurisdiction of the Public Service Commission to compel the extension; (2) assuming jurisdiction in the commission, objects to the reasonableness of the order upon the grounds that the costs and difficulty of furnishing service is out of proportion to the needs for service involved; and (3) contends that the rate ordered will occasion loss to the plaintiff and constitute a burden upon its customers.   The following are the facts necessary to an understanding of the controversy:

The city of Milwaukee operates a waterworks utility.   By contract with the town of Milwaukee it had extended service to residents of the town residing in certain streets in a limited area.   This was in the vicinity of Green Bay avenue.   Under the terms of this contract, the town of Milwaukee laid mains at its own cost to the Milwaukee city limits, and connected with the Green Bay avenue feeder main.   This contract expressly prohibited the town from extending its main to any other streets than those described in the contract, or to sell or to deliver water to any other individual or property.   The town of Milwaukee also received some water from the city of Milwaukee utility as a result of a contract with the village of Fox Point.   The village of Fox Point takes water from the Milwaukee utility, and in order to get the water constructed a main along the Port Washington road in the town of Milwaukee to connect with the Milwaukee main at Hampton avenue.   As a part of its easement agreement with the town of Milwaukee, residents of the town abutting the Port Washington road were permitted to obtain water from the main

for domestic uses only. The city of Milwaukee consented to this use and the contract restricted the town to one-inch mains and four fire hydrants. The point at which the Fox Point pipe connects with the Milwaukee main is the intersection of Hampton avenue and Port Washington road. The Milwaukee main runs from this point east for half a dozen blocks to Santa Monica avenue where it connects with a main running north from East Capitol drive extending along Santa Monica avenue the full length of the village of White Fish Bay and serving that village. The area seeking service in this case is a small triangular tract beginning on the east side of the Port Washington road, a short distance north of Hampton avenue, extending north to West Marne avenue, thence southeasterly to North Second street, thence south, to a point slightly north of Hampton avenue. This is a real-estate subdivision, and the impetus to get water comes from the desire of the promoters for the advantages of city water. The tract is twenty-nine acres in extent, appears to cover four platted blocks, and has upon it thirty-three homes and one hundred one vacant lots. The estimated population will be five hundred forty-nine people when fully built up. One of the city's objections to serving this area, which presently is getting its water from private wells, is that the pressure on the Santa Monica, Hampton, Fox Point line is not enough to take care of any more customers in the town of Milwaukee, and that as a result a ten-inch main off the Green Bay road running east to Hampton avenue would have to be built or a main which runs for a couple of blocks on the Port Washington road north from East Capitol drive would have to be extended north to the intersection of the Port Washington road and Hampton avenue. The construction of either main would require the expenditure of from thirty to forty thousand dollars, and the mains when so constructed would be of considerably greater capacity than necessary or proper to serve the area presently requesting water. It is claimed that

to require the expenditure would be unreasonably burdensome upon plaintiff; that at present rates, plaintiff could not possibly earn on this investment; that the number of people demanding service is so small and the prospects of their increasing so slight that this service cannot be furnished economically and would have to be recompensed for by rates much above those charged currently by the plaintiff.

Plaintiff assumes that the question is whether the Public Service Commission has jurisdiction to compel a municipally owned waterworks utility to extend its service into an adjoining township and render water service in a new area. The question is narrower than this. It is whether a municipal utility which, by contract with an adjoining town, has assumed to serve small, isolated, and precisely limited portions of a town, has become a utility throughout that entire town, and bound to extend its service in response to orders of the Public Service Commission. In *Pabst Corp. v. Milwaukee,* 190 Wis. 349, 208 N. W. 493, it was held that the city of Milwaukee was a municipal water utility, subject to regulation and control by the railroad commission. This, of course, is conceded by plaintiff, but is claimed to be wholly immaterial in this case, and we agree that the *Pabst Case* does not touch the precise question that concerns us here. The city of Milwaukee is a municipal water utility, but the question here is whether it is such a utility in the town of Milwaukee as a whole. We are of the view that if the Milwaukee utility by extending its service beyond the limits of the municipality became a utility outside its boundaries to the extent of its holding out as such, the geographical scope of this holding out must be measured by the terms and limitations of the contract with the town by which the service was extended. See *Milwaukee v. West Allis,* 217 Wis. 614, 258 N. W. 851, 259 N. W. 724; *Milwaukee v. West Allis,* 236 Wis. 371, 294 N. W. 625. Thus, in the *West Allis Cases,* cited *supra,* where the city of Milwaukee agreed by contract to furnish

the West Allis utility with water for the convenience of the patrons of that utility, termination of the contract was held not to terminate the duty of the Milwaukee utility to continue at a rate to be fixed by the Public Service Commission to serve the water needs of the community which by contract it had undertaken to serve. See also in this connection *Wisconsin T., L., H. & P. Co. v. G. B. & M. C. Co.* 188 Wis. 54, 205 N. W. 551. In the *West Allis Cases* it will be noticed that the city of Milwaukee undertook to supply the entire municipality which had contracted for water service.

The case of the town of Milwaukee is quite different. Here, to paraphrase the language of *Wisconsin Gas & E. Co. v. Railroad Comm.* 198 Wis. 13, 222 N. W. 783, the Milwaukee utility has done precisely what it was necessary for it to do to prevent it from becoming a public utility in the town as a whole. It serves only two small and isolated portions of the town under special contracts. The first and principal portion is that along Port Washington road. The service to this portion is in response to the obligations of a carefully limited contract entered into as an incident to the city's effort to serve the village of Fox Point, and in response to the necessities of getting an easement from the town of Milwaukee. The contract limits the service to those residences abutting on the Port Washington road and to a few fire hydrants. The only other service is a short line brought to the city limits by the town of Milwaukee in the vicinity of Green Bay avenue, and as to this, the agreement for service is also narrowly prescribed as to territory and scope. The city has never constructed any equipment for extending service beyond its boundaries and into the town of Milwaukee. It has declined to enter into a special contract with the town broader in geographical extent than the very narrow limits of the contracts heretofore referred to. Having by contracts agreed to serve those residents of the town of Milwaukee abutting the Port Washington road and those included in the territory

covered by the Green Bay avenue extension, the Milwaukee utility under the doctrine of the *West Allis Cases, supra,* may find even if its contract be canceled that it must continue to serve contract customers upon a utility basis. We think, however, that this is a far cry from the conclusion that the city of Milwaukee has become a utility in the town of Milwaukee as a whole. Such a holding would mean that it is within the jurisdiction of the Public Service Commission to compel Milwaukee to construct mains in the town of Milwaukee, and to cover the entire territory in accordance with the needs of its population. This is so out of line with every limitation put by the city upon its holding out that we think it cannot be sustained. Such a holding would put an extraordinary burden upon the Milwaukee utility, and when it is considered that the authorization to municipal utilities to extend service outside their boundaries was originally based upon the theory that they should be permitted to dispose of surplus water, it would be completely at variance with the basis and purpose of the authorization. In this connection see *Attorney General v. Eau Claire,* 37 Wis. 400; *State v. Eau Claire,* 40 Wis. 533.

Much reliance is put upon the resolution of the city council of Milwaukee enacted on June 20, 1927. This resolution recited in substance that since it was necessary for the city to terminate contracts for water existing between the city and West Allis, North Milwaukee, and the village of Shorewood, that whereas the purpose of the resolution had been misunderstood by outlying municipalities, and whereas there are in existence certain physical connections between the Milwaukee utility and the public utilities of the outlying cities, and whereas a bill is pending in the legislature to create a metropolitan water district outside the city of Milwaukee largely because of the cancellation of the contracts, and whereas there has been a conference and agreement between the representatives of the city provided the city evidences

willingness to furnish water to the outlying utilities of the villages, towns, and cities named, it is resolved that the city of Milwaukee express its willingness to these municipalities to furnish them provided a rate is kept in existence by the railroad commission of Wisconsin. It was further resolved that the city of Milwaukee supply water to town territories in the future as in the past by extending service as soon as owners of such territory shall declare their intention by signing petitions for annexation when presented; that the council will, however, give serious consideration to any application of any town for water if proper plans are presented, and may in its judgment furnish water to towns upon the merits of each case. The general purpose of the resolution was doubtless to allay the fears of outlying communities and to induce them to drop support in the legislature of a bill to create a metropolitan water district. The city carefully circumscribed its promises by stating that it would extend service in towns to portions of the town that had evidenced an intention to become annexed to the city, or in individual cases, according to the merits of the case. This is pretty thin support for a holding that Milwaukee has anywhere or at any time evidenced an intention to extend into towns as a whole. The situation in towns is quite different from that in cities and villages. It is held in *South Shore Utility Co. v. Railroad Comm.* 207 Wis. 95, 240 N. W. 784, that there is no such thing as an indeterminate permit in a town, and that there may be several utilities in the town, each presumably under a duty to serve within the limits of its undertaking.

That is the situation here. The city is in no position to keep another water utility out of the town, upon any claim that it has an indeterminate franchise there. Neither has it the duty to extend its service in the town beyond the limits of the holding out evidenced by its contract, and since the holding out is not coextensive with the limits of the town, it cannot be treated as a utility in the town as a whole. See, in this connection, *Valcour v. Village of Morrisville,* 108 Vt. 242,

184 Atl. 881; *Johnstown Water Co. v. Public Service Comm.* 107 Pa. Super. 540, 164 Atl. 101.

For the foregoing reasons, judgment must be reversed, and cause remanded with directions to vacate and set aside the order of the Public Service Commission.

*By the Court.*—Judgment reversed, and cause remanded with directions to vacate and set aside the order of the Public Service Commission.