CITY OF MILWAUKEE, Appellant, vs. PUBLIC SERVICE COMMISSION and others, Respondents.

*October 8—November 9, 1954.*

118

For the appellant there were briefs by *Walter J. Mattison,* city attorney, and *Richard F. Maruszewski* and *John F. Cook,* assistant city attorneys, and oral argument by *Mr. Maruszewski* and *Mr. Cook.*

For the respondent Public Service Commission there was a brief by the *Attorney General* and *William E. Torkelson,* chief counsel, and oral argument by *Mr. Torkelson.*

For the respondent General Motors Corporation there was a brief and oral argument by *Emmet Horan* of Milwaukee.

For the intervenor-respondent city of Glendale there was a brief by *C. R. Dineen,* city attorney, and *William C. Dineen* and *Frank C. Kenney* of Milwaukee of counsel, and oral argument by *William C. Dineen.*

MARTIN, J. Appellant challenges the jurisdiction of the Public Service Commission to make the order here in question.

The water system of the city of Milwaukee is a public utility subject to regulation as is any other public utility, *Pabst Corp. v. Milwaukee* (1926), 190 Wis. 349, 208 N. W. 493; *Flottum v. Cumberland* (1940), 234 Wis. 654, 291 N. W. 777; and it is well established that in maintaining and operating such system the city is acting in its proprietary capacity, *Milwaukee E. R. & L. Co. v. Milwaukee* (1932), 209 Wis. 656, 245 N. W. 856; *De Pere v. Public Service Comm.* (1954), 266 Wis. 319, 63 N. W. (2d) 764.

Every public utility has the obligation, within the scope of its undertaking, to furnish its service to all who reasonably require it. *Northern States P. Co. v. Public Service Comm.* (1944), 246 Wis. 215, 16 N. W. (2d) 790; *Lodi Telephone Co. v. Public Service Comm.* (1952, 1953), 262 Wis. 416, 55 N. W. (2d) 379, 57 N. W. (2d) 700; 43 Am. Jur., Public Utilities and Services, p. 586, sec. 22. The duty to enforce such obligation is imposed upon the Public Service Commission. Sec. 196.37 (2), Stats. In the case of a municipal utility that jurisdiction is not limited to the boundaries of the municipality but extends to all areas where the utility has undertaken to serve. *Milwaukee v. Public Service Comm.* (1942), 241 Wis. 249, 5 N. W. (2d) 800; *Milwaukee v. Public Service Comm.* (1948), 252 Wis. 358, 31 N. W. (2d) 571.

The basic question here is whether appellant has extended its service and is holding itself out to serve in the general area within the city of Glendale in which the General Motors building is located. This is a question of fact, and the commission found:

"3. That at all times since the filing of this application herein, the premises occupied by the applicant have been lo-

Exhibit 7.

cated partly in the city of Milwaukee and partly in the city of Glendale, and are included in the area in which the city of Milwaukee, as a water public utility, has and does serve the public and does and has held itself out to serve the public."

If there is substantial evidence to support this finding, it will be upheld on appeal. *Gateway City Transfer Co. v. Public Service Comm.* (1948), 253 Wis. 397, 34 N. W. (2d) 238.

From the exhibits in evidence the line between Milwaukee and Glendale forms a peninsula or pocket-shaped area in the city of Glendale bounded by North Port Washington road on the west, West Capitol drive on the south, North Richards street on the east, and the Milwaukee river on the north. A map of this area, Exhibit 7 printed herewith, was prepared under the direction of Donald W. Webster who was town engineer for the town of Milwaukee which is now the city of Glendale. This map shows that the General Motors building is 300 feet south of the E. R. Godfrey & Sons property, about 150 feet west of the Worden-Allen Company which is about 250 feet west of the Square D Company, and about 700 feet south of the Continental Can Company which is immediately south of the Schlitz Brewing Company property. Mr. Webster testified that the vicinity of the General Motors building is generally considered to be industrial and light manufacturing.

It is undisputed that all of these companies mentioned are located in whole or in part outside of the Milwaukee city limits and that they are receiving water from the city of Milwaukee. For a more thorough understanding of how this situation came about we have taken judicial notice of the Reports of the Public Service Commission (*Wisconsin Power & Light Co. v. Beloit* (1934), 215 Wis. 439, 254 N. W. 119) in the matter of Milwaukee Water Utility—Service to School District No. 1, 35 P.S.C.W.R. 328, in which the commission

ordered the city of Milwaukee water utility to continue to render water service to School District No. 1 of the town of Milwaukee, Wisconsin Can Company, Industrial Research Laboratories, Schlitz Brewing Company, and E. R. Godfrey & Sons Company.

These applicants were located in a tract of land which was acquired by the United States government in 1942. The federal government constructed a system of water mains in this tract, the so-called Milwaukee Ordnance area, and contracted with the city of Milwaukee to receive water from the city mains. In 1946 when this area was transferred by the federal government to the War Assets Administration for the purpose of disposing of the property, the city entered into a contract with the War Assets Administration which provided, in part, that water service would be furnished so long as title to the Milwaukee Ordnance area remained in the United States government, reserving the right to discontinue such service should the property be sold or leased to private enterprise for private purposes. After the sale of property to the applicants the utility continued to furnish water to each of them for a considerable time. Later the utility refused to continue the service and the commission, finding that the utility had held itself out to serve the public in the Milwaukee Ordnance area, ordered it to continue.

It is to be noted that in the contract between the city and the War Assets Administration, the city reserved the right to discontinue water service in the Milwaukee Ordnance area upon sale of the property to private enterprise. Whether or not such a clause constitutes legal ground for abandonment of service is a question we need not decide here, but it is significant that the city made no effort to take advantage of it. For some time following the sale of the property it voluntarily continued to serve the new owners and lessees.

Appellant argues throughout that the fact that it is serving these other industries in the area of Glendale does not constitute a holding out which would impose upon it an obligation of service.

The fundamental nature of this obligation of service is described in 1 Wyman, Public Service Corporations, p. 284, sec. 331, as follows:

"The fundamental fact in public employment is the public duty which results in all cases from public profession of a public calling. It is somewhat difficult to place this exceptional duty in our legal system. It is like the contractual obligation in that it is an affirmative duty to act for a certain person; but it is different in that it does not depend upon assent of the party charged. It is like the obligation in tort in that it is imposed by law; but it is not imposed upon anyone against his will as is the obligation in tort. In one sense the obligation to serve the public is voluntarily assumed; and therein the public duty to act differs from the typical duty not to commit a tort, which each person without his ever being consulted owes to all the world. And yet once this obligation is established by his undertaking, his duty extends to all within the profession, however unwilling he may be in a particular case to render service. Public duty is in this sense imposed by law upon those who put themselves into public service; and therein very plainly the situation differs from the typical contractual duty which one owes only in particular cases to the persons with whom he has voluntarily negotiated a previous agreement."

To support its contention that the facts here do not warrant a finding of holding out, appellant attempts to apply such cases as *Milwaukee v. Public Service Comm.* (1942), 241 Wis. 249, 5 N. W. (2d) 800, and *Milwaukee v. Public Service Comm.* (1948), 252 Wis. 358, 31 N. W. (2d) 571, where the utility had a contract with an adjoining municipality to serve a precisely limited area, but they have no relation to the

facts here, except that in holding such contracts to define the extent of the holding out, the utility was held to have the obligation of service in the specific area so defined. Here there is no contract between the utility and the city of Glendale.

Appellant argues that all the industries it serves in the city of Glendale, such as Schlitz, Continental Can, and Godfrey, receive water service by specific agreements covering specific areas; that its profession of service is limited to those specific areas; and that it has never served or professed to serve any area which included the General Motors property. This is a specious argument attempting to give the word "area" a meaning entirely different from that intended by the commission in its finding that the General Motors premises are included in the area in which appellant has held itself out to serve. That there are contracts for water service between the utility and these various industries does not give the fact of such service any less weight as evidence of its holding out. In any case where the utility supplies water to a consumer there is at least an implied contract covering such service.

Furthermore, the fact is that the city of Milwaukee is serving these consumers in compliance with the order of the Public Service Commission made after the city had served notice of abandonment of the service. It is indicated that these contracts were entered into between the utility and the various consumers in this area after the commission had ordered the service. This feature distinguishes the facts here from the cases cited by the appellant wherein contracts were entered into before any service was rendered and before there was any evidence of a holding out. 35 P.S.C.W.R. 328. Any contract the city now has with these consumers is the result of the order and not a voluntary agreement to serve.

It is also argued that the present consumers in this area are simply permitted to call for their water by bringing their own mains up to the appellant's mains at the city limits and

that such action by the city cannot be construed as a holding out to serve in this area under cases such as *Wisconsin Gas & Electric Co. v. Railroad Comm.* (1929), 198 Wis. 13, 222 N. W. 783, and *Milwaukee v. Public Service Comm.* (1942), 241 Wis. 249, 5 N. W. (2d) 800. As recited above, the water mains within this area which are utilized by the appellant in furnishing water to the present consumers were installed by the federal government in consideration of the appellant's agreement to furnish water to the Ordnance area. It is also a fact that the city of Milwaukee owns and operates mains in an easement through the northerly portion of the Ordnance area in Glendale in order to supply water to the villages of Whitefish Bay and Fox Point.

It is sufficient to say that appellant's argument on this proposition is completely inconsistent with its position that the commission is attempting to force it to extend water service to an area outside its city limits. Acceptance of this argument would compel the conclusion that the order under review does not require the extension of service beyond its corporate limits.

The evidence shows that the city, as a water utility, voluntarily and by order of the Public Service Commission, has undertaken to serve the public with water in an area in Glendale which completely surrounds the General Motors building. Such evidence of a public profession amply supports the finding of a holding out in the area.

Appellant maintains that the commission erred in finding that the premises of General Motors located in the city of Glendale are within the Milwaukee Ordnance area. The argument is without merit. The commission was entitled to disregard Mr. Webster's testimony that the Ordnance area was located north of Olive street. The E. R. Godfrey property is south of Olive street, as is the General Motors building, and it was found by the commission in the School

District proceeding referred to above (where the Godfrey Company was one of the applicants) to be within the Ordnance area. In that proceeding, as here, the commission defined that area as being north of Capitol drive, east of Port Washington road and west of Richards street. It is plain from the commission's findings that the name is merely a label for the tract of land so defined.

It is significant to note that compliance with the order of the commission would require no installation of mains or other facilities by the utility. All that is necessary to supply water to the rear portion of the General Motors building is to install a two-foot length of pipe within the building to connect the water system in the Glendale portion to that already in operation in the Milwaukee portion. Moreover, the city does not contend that the service applied for will tax its water supply or pumping capacity. The Glendale portion of the building consists mainly of warehouse facilities and loading areas. It contains a toilet, drinking fountain, and a sprinkler system designed for fire protection. Except in case of fire the amount of water to be used will be very small. Since there is no other water supply available in Glendale, the applicant would have no alternative but to construct a well and storage tank, the cost of which was estimated to be at least $45,000.

In our opinion the commission had jurisdiction to order the service applied for, the record contains substantial evidence to support the findings upon which the order is based, and the judgment must be affirmed.

Many questions have been presented in the briefs and upon oral argument which are unnecessary to consider in the light of our decision on the question of "holding out," which all counsel concede is the basic question on this appeal.

*By the Court.*—Judgment affirmed.