SOUTH SHORE UTILITY COMPANY and another, Appellants, vs. RAILROAD COMMISSION OF WISCONSIN and another, Respondents.

*January 11—February 9, 1932.*

For the appellants there was a brief by *Frank, Wheeler & Pelkey* of Appleton and *Bottum, Hudnall, Lecher, Mc-Namara & Michael* of Milwaukee, attorneys for the South Shore Utility Company, and by *Ryan, Cary & Ryan* of Appleton, attorneys for the village of Combined Locks, and oral argument by *Suel O. Arnold* of Milwaukee.

For the respondents there was a brief by the *Attorney General* and *Samuel Bryan,* assistant attorney general, for the Railroad Commission, and *Joseph W. Lefevre,* city attorney, for the city of Kaukauna, and oral argument by *Mr. Bryan* and *Mr. Lefevre.*

NELSON, J. It is undisputed that the board of trustees of the village of Combined Locks, on the 18th day of January, 1929, granted a franchise to the South Shore Utility Company and that this franchise is the only one ever granted by the village. It is apparently conceded by the respondents that the franchise so granted is valid unless at the time it was granted there was in operation in the village, under an indeterminate permit, a public utility engaged in similar service. Sec. 196.50, Stats. 1927, provides in part as follows:

"No license, permit or franchise shall be granted to any person, copartnership or corporation, to own, operate, man-

age or control any plant or equipment for the conveyance of telephone messages, or for the production, transmission, delivery or furnishing of heat, light, water or power in any municipality, where there is in operation under an indeterminate permit, as provided in sections 196.01 to 197.10, inclusive, a public utility engaged in similar service, without first securing from the commission a declaration, after a public hearing of all parties interested, that. public convenience and necessity required such second. public utility."

It is conceded that prior to the granting of the franchise no declaration of public convenience and necessity had been secured from the commission. It is therefore obvious that if, at the time the village granted the franchise, a public utility engaged in similar service was operating in the village under an indeterminate permit, then a declaration of convenience and necessity was necessarily a condition precedent to the authority of the village to grant a franchise. It is equally obvious that if no public utility was in operation in the village under an indeterminate permit, then no declaration of public convenience and necessity was required as a condition precedent to the granting of a franchise by the village. The vital question on this appeal is whether a public utility, engaged in furnishing electric service, was operating in the village under an indeterminate permit. The answer to this question, as we view it, is determinative of the present controversy. The appellants contend that neither the city of Kaukauna nor the Wisconsin-Michigan Power Company was operating in the village under indeterminate permits. The respondents, on the other hand, contend that the mere occupation of any part of a town by a public utility company organized under sec. 180.17, Stats., and the rendering of a service to persons or places in such town, results, under the law, in giving to such utility an indeterminate permit in such town, and that such indeterminate permit so acquired continues to exist, until legally terminated, as to all parts of said town, and even as to portions of said town thereafter

incorporated into villages. Applying respondents' contentions to the particular issues in this case, it is claimed that, since the Kaukauna Gas, Electric Light and Power Company was the first public utility to render service in the town of Buchanan, it thereby obtained an indeterminate permit or a right in the nature of an indeterminate permit to render service in that town; and since the city of Kaukauna succeeded to all of the rights and privileges of its predecessor and continued to render service in the town of Buchanan, it either took over the indeterminate permit of its predecessor or acquired an indeterminate permit to render such services in the town of Buchanan by continuing to render service in the town; and since from the year 1917 on it rendered contract service to the paper company, it was the first to render service in that part of the town of Buchanan out of which the village was subsequently carved and was, at the time the village granted the franchise to the South Shore Utility Company, operating in the village under an indeterminate permit; and that therefore the franchise is illegal and void. While the facts upon which these contentions are based are true, it does not follow that respondents' contentions are sound.

Whether an indeterminate permit in a town may be obtained by a public utility and, if so, in what manner, has not heretofore been passed upon by this court. Although in at least two cases the court has been asked to pass upon these questions, no case has heretofore been considered in which the determination of these questions was necessary to a decision or in which the questions were squarely presented and adequately briefed. In *Wisconsin Gas & E. Co. v. Railroad Comm.* 198 Wis. 13, 222 N. W. 783, a controversy between the Wisconsin Gas & Electric Company and the city of Plymouth arose as to their respective rights as public utilities in the town of Plymouth. The court below in that action had held that the predecessors of the plaintiff therein had an indeterminate permit in the town of Plymouth result-

ing from the occupation of a portion of said town and the rendering of service therein. However, this court did no more than to determine, as the trial court had done, that the city of Plymouth had no exclusive right to render utility service within the town of Plymouth and that the Railroad Commission was authorized to make the order therein. In *Plymouth v. Railroad Comm.* 204 Wis. 71, 234 N. W. 333, this court again found it unnecessary to determine how a legal franchise or permit to a public utility is to be obtained within a town or whether such franchise or permit is necessary to give rise to an indeterminate permit within said town. On that subject, in so far as such rights in towns are concerned, it was said: "There seems to be a hiatus in the statutes." See secs. 66.06 (3) and 193.03, Stats.

No statute of this state confers express authority upon towns to grant franchises to public utilities. While the legislature has given express authority to cities and villages to grant franchises—sec. 66.06 (3)—and has provided how domestic corporations organized to furnish telegraph, telephone service, or transmit heat, power, or electric current to the public or for public purposes, may construct and maintain such lines or systems along highways or through cities or villages, it has definitely provided that "no lighting or heating corporation shall have any right hereunder in any city or village until it has obtained a franchise from such city or village." Sec. 180.17 (1) and (7). While the legislature has given no authority to towns to grant franchises, it has in sec. 196.55, Stats. 1927, recognized that a public utility might exist claiming authority to operate by virtue of a franchise granted by a "town" or "other governing body" of a town. It seems very clear to us that the intent and purpose of sec. 196.55, as originally enacted, was for the purpose of bringing within the law every public utility operating in this state at that time, regardless of the source of its authority to operate, and regardless of whether such authority or franchise was originally given to it by a town.

A careful review of all the statutes bearing upon this question reveals that the legislature has never seen fit to authorize towns to grant franchises to public utilities nor to provide in what manner a public utility may secure, if at all, an indeterminate permit in a town. The fact that the legislature has never legislated in this particular field is, to say the least, quite significant. It would seem that the legislature, for reasons which appealed to it to be sound, deemed it unwise to confer authority upon towns to grant franchises, and further deemed it unnecessary to provide the manner of securing indeterminate permits in a town or to declare that a public utility which renders service in a town shall have either an indeterminate permit or a right having the effect of an indeterminate permit. Just what prompted the legislature not to legislate with respect to these matters is shrouded in uncertainty, but it may be that the legislature was of the opinion that economic laws rather than statutory laws would, for the time being at least, operate satisfactorily in the public interest. At the time the public utility law was enacted public utilities, exclusive of telephone and telegraph companies, were operated almost entirely within cities and villages. The rather limited extension of "fringe" service beyond the limits of cities or villages was then of no particular consequence or concern. The extension of service to places or persons in towns is pretty much controlled by economic laws and emanates from cities or villages where public utilities operate. This is well illustrated by what took place in the field involved in this controversy. Extension of service was made by the city of Kaukauna into parts of the surrounding towns contiguous to that city and by the Wisconsin-Michigan Power Company into parts of surrounding towns contiguous to the city of Appleton. It appears that both the city of Kaukauna and the Wisconsin-Michigan Power Company first rendered service in the portions of the town of Buchanan adjacent to the cities where these utilities operated. While the town of Buchanan is twelve miles long,

we may well take judicial notice of the fact that there are towns in the state whose dimensions are much greater. To hold that the legislature intended that a public utility which first rendered service in a town should thereby secure an indeterminate permit or a right in the nature of an indeterminate permit in the whole town would be to supply, by judicial construction, something that the legislature has failed to declare.

While the respondents concede that a permit to occupy highways authorized by sec. 86.16 is in the nature of a police-power regulation applicable to both individuals and corporations who desire to construct electric lines within the public highways of a town and may not in any sense be considered as a franchise, yet they earnestly contend that sec. 180.17, Stats. 1927, directly grants to such corporations as are organized under it, certain rights and privileges which constitute rights in the nature of indeterminate permits which, when exercised by such companies by occupying territory of a town and by rendering public utility service therein, results in franchises granted by the state to such corporations, which thereafter have the force and effect of indeterminate permits. There would be much plausibility in respondents' contention if the legislature had not enacted a public utility law which appears to be as full, complete, and comprehensive as the legislature intended it to be. Sec. 180.17 is found in ch. 180, Stats., which relates to domestic corporations. Obviously the legislature has failed to provide how, if at all, indeterminate permits are acquired in towns. This also is of great significance when it is considered that the public utility law has, since its original enactment, been repeatedly amended. We do not feel that the contentions of respondents as to the effect of sec. 180.17 are so clear as to warrant us in upholding them.

If the effect of this decision be to place towns in a field where a free-for-all rendering of utility service by different public utilities may be permitted, we can only say that such

is the effect of the law as it exists. The time may come—it may even now be at hand—when the occupancy of town territory by public utilities may be so extensive as to bring into economic conflict two or more public utilities. It is, however, for the legislature to note changing or changed conditions and to legislate in regard thereto as it shall deem wise and in the public interest.

We conclude that, under the existing law, a public utility does not obtain an indeterminate permit in a town by simply occupying the highways pursuant to the permit authorized by sec. 86.16, Stats., or by virtue of organization under sec. 180.17, Stats., or by merely extending its service to persons and places within a town. From this conclusion it follows that neither the city of Kaukauna nor the Wisconsin-Michigan Power Company, on January 18, 1929, was operating in the village of Combined Locks under an indeterminate permit, and that no declaration by the commission of public convenience and necessity was required as a condition precedent to the granting of a franchise to the South Shore Utility Company by the village of Combined Locks.

In the view we take of this controversy it becomes unnecessary to pass upon the several other questions raised in the briefs. It follows from what has been said that the order of the commission requiring the South Shore Utility Company to cease and desist from selling electric light and power to the public in the village of Combined Locks was unreasonable and unlawful and should have been vacated and set aside by the court below.

*By the Court.*—Judgment reversed, with directions to enter judgment vacating and setting aside the order of the commission herein.