NORTHERN STATES POWER COMPANY, Respondent, vs. PUBLIC SERVICE COMMISSION and another, Appellants.

*November 14—December 19, 1944.*

For the appellant Public Service Commission there was a brief by the *Attorney General* and *H. T. Ferguson,* assistant attorney general, and oral argument by *Mr. Ferguson.*

For the appellant E. W. Murphy there was a brief by *Philip H. Porter* of Madison, attorney, and *Arthur T. Holmes* of La Crosse of counsel, and oral argument by *Mr. Porter.*

For the respondent there was a brief by *Ramsdell, King & Linderman* of Eau Claire and *Jonathan C. Bunge* of La Crosse, and oral argument by *Bailey Ramsdell.*

MARTIN, J.  It appears that plaintiff is operating a heating-utility system in the city of La Crosse, pursuant to an indeterminate permit resulting from a franchise granted by the city to the Edison Light & Power Company, a predecessor in interest of the plaintiff.  Under that franchise the plaintiff has the right to use the public streets and alleys of the city for the construction and maintenance of its mains or pipes through which hot water is circulated for the furnishing of heat to the members of the public served by the utility.

The heating system consists in general of a central heating plant operated in connection with the electric-utility plant

owned and operated by the plaintiff in the city of La Crosse; and of mains or pipes laid in various streets and alleys of the city which are used to convey water heated at the central plant to and from the various premises where heating-utility service is furnished. Mains of the utility are laid generally throughout the central or business portion of the city, which extends from the Mississippi river as far east as Sixth or Seventh street, approximately a distance of three fourths of a mile. East of Sixth street the main extends to King street to a point between Fourteenth and Fifteenth streets, just east of an alley which joins King street between Fourteenth and Fifteenth streets. A lateral belonging to the utility extends through the alley a distance of four hundred twenty-eight feet to the north, and is used to furnish heat to the residence of one Dr. McGarty, whose premises are situated near the north end of said lateral. Both the feed and return pipes of this lateral, for a distance of one hundred ninety-six feet from the King street main, have or had originally an inside diameter of three inches. The remainder of the lateral consists of feed and return pipes which had originally an inside diameter of two inches.

The premises owned by defendant Murphy, for which service was requested and required to be given by the order in question, abut on the alley between Fourteenth and Fifteenth streets, and are situated more than two hundred feet north of King street, so that if connection were made to the existing lateral it would have to be made to the portion thereof whose pipes are two inches in diameter. Prior to the commencement of a proceeding in which the order under review was made, the defendant Murphy requested the plaintiff to furnish his premises with its utility-heating system. Such request was refused or denied and thereupon he filed his complaint with the commission, alleging such request and refusal of service.

Plaintiff sought to justify its refusal on the ground, among others, that it would be impossible to maintain a differential in pressure in the lateral in the alley if service should be fur-

nished to Murphy and adequate service should at the same time continue to be furnished to the residence of Dr. McGarty, a few hundred feet to the north. The operating efficiency of any connection to the heating mains or laterals depends on the ability of plaintiff to so operate its facilities as to maintain a differential in pressure between the feed and return pipes of the utility mains or laterals with which a connection is made to any premises for which heating is furnished. Unless such differential is maintained the hot water in the pipes of the mains and laterals will not flow; and this prevents the giving off of heat in the radiators in the premises connected with such mains or laterals.

The lateral in the alley between Fourteenth and Fifteenth streets was laid about the year 1900. The ordinary service life of any two-inch or three-inch pipe in any lateral maintained by plaintiff in the city of La Crosse is between thirty and forty years. In that length of time the pipe becomes so incrusted that its effective diameter is measurably decreased. In the usual course of procedure the lateral in the alley between Fourteenth and Fifteenth streets will have to be replaced if service to Dr. McGarty is to be continued, regardless of whether service shall or shall not be given to defendant Murphy. The premises now owned by defendant Murphy and for which he demanded the utility service were formerly furnished with heat from the plaintiff's utility system by connection with the lateral in the alley above mentioned. At one time there were three houses which received plaintiff's heating service by means of this lateral. The house owned by Dr. McGarty is the only one now receiving such service.

Plaintiff's engineer testified that if the lateral in the alley between Fourteenth and Fifteenth streets should be replaced with pipes of their original or a larger diameter, it was at least possible that service could be given to defendant Murphy and adequate service still continued to Dr. McGarty. He testified that the cost of this replacement would be about $3,280. Other

engineers testified that the replacement of the lateral would be sufficient to enable plaintiff to render adequate service to both Dr. McGarty and defendant Murphy; that if a booster pump were installed on the King street main not far from Fifteenth street, plaintiff would be enabled to furnish adequate heating service not only to Dr. McGarty and defendant Murphy, but to several more customers in the immediate vicinity of King and Fifteenth streets, if they should apply to the plaintiff for service.

It further appears that about 1920 plaintiff inaugurated a policy of discouraging requests for service by persons not presently receiving service. In 1922 the proprietor of a bowling alley made request for service which was refused; the matter came before the commission; the petition was dismissed "because of the large expense incident thereto and the heavy additional burden which might be placed on not only the existing customers, but prospective customers in the way of inevitably increased rates." The commission further stated that "in the absence of such improvements in the distribution system it is evident that the taking on of any additional customers would be detrimental to the furnishing of reasonably adequate service to existing customers."

Prior to 1940, the commission, on its own motion, instituted a proceeding relative to the rates, rules, and practices generally of the plaintiff company, which in addition to its functions as a heating utility and as a gas utility in the city of La Crosse, operates as an electric utility in a large number of municipalities throughout the west central portion of Wisconsin. The evidence in that proceeding related entirely to the rates and rules of the plaintiff company for its electric-utility service. However, a provision was inserted in the order in that proceeding which approved certain rates and rules which had been filed by the plaintiff with respect to its heating-utility service, and the order in the proceeding purported to approve the rates and rules of the heating-utility service. Among the rules was

one constituting a so-called "availability clause," which read as follows:

"Availability—Available for space heating to residential and commercial customers located within the area designated on the attached map provided that service from existing mains will be adequate for the customers to be served."

This rule was filed as being in accordance with the decision of the commission in the bowling-alley case.

Subsequent to the entry of the order under review and on April 10, 1943, plaintiff filed an application with the commission for a general investigation and determination of the conditions, duties, and facilities of the plaintiff with reference to furnishing of hot-water heating service at La Crosse, and for approval of extension rules and limitation of service. The rules proposed were as follows:

"(1) No additional service shall be taken on in the area east of Seventh street [residential section, which includes the Murphy property].

"(2) Additional service may be taken on in the area west of Seventh street, provided connection can be made to existing mains and the pressure differential at the point of connection is sufficient to permit adequate service without impairing service already being rendered.

"(3) The company shall in no instance be required to furnish service beyond that which can be supplied adequately with the present plant and distribution system, and without replacing and rebuilding any part of the same.

"(4) The company may require from applicants a reasonable advance payment or deposit to guarantee retention of the service applied for for a period of at least five years."

A hearing was had and the commission found:

"(2) That the Northern States Power Company, operating as a public heating utility in the city of La Crosse, owes a duty of service which extends at least to all persons who own

or occupy property abutting upon the streets or alleys in which applicant's mains are laid.

"(3) That the rules proposed by the applicant prescribing and defining the proposed limitation upon the obligation of service of said Northern States Power Company as a public utility for the furnishing of heat to the public in La Crosse, if permitted to be effective, would be unreasonable and unjustly discriminatory."

On January 15, 1944, the commission entered an order disapproving the proposed rules for service submitted by the utility. By stipulation of the parties the record in that proceeding was made a part of the record in the instant case. No appeal was taken from the order of January 15, 1944.

There appears to be no dispute as to the foregoing facts. The plaintiff utility contends that its undertaking does not include the service directed to be furnished by the order under review. Appellants contend that the territory within which the utility undertakes to furnish heat "to and for the public" is defined by a map filed with the commission as a part of its schedule of rates, rules, and regulations, and that the Murphy residence is located in that territory; that the lateral extending north from King street lies in an alley crossing the Murphy property and is used to serve only one patron, Dr. McGarty, whose residence is located at the end of the lateral; and that the Murphy residence was actually served by the utility after its establishment in 1899 until 1913, when the service was voluntarily discontinued.

Ordinance No. 308, passed by the common council of La Crosse May 12, 1899, provided that the Edison Light & Power Company, the predecessor in interest of the plaintiff, "is hereby given and granted the right, power and privilege to put down, lay and maintain pipes in, through and across the streets, alleys and public grounds of said city for the purpose of conveying, carrying and passing, by any method which said company may

choose to adopt, steam, hot water, liquid air, compressed air, or air in any form, or any other heating compound, or substance for heating and ventilating and regulating purposes, or for any other purpose or purposes whatsoever connected with heating and regulating."

Plaintiff's predecessor received and accepted the franchise granted by the city, which was thereafter surrendered for an indeterminate permit as provided by ch. 499, Laws of 1907— the original Public Utility Law of Wisconsin. It must be held as a matter of law that, originally at least, the service required to be given to the Murphy residence was within the scope of the utility's undertaking. The trial court held that the utility's obligation is to be measured by its avowed holding-out; that such holding-out has been limited expressly by the company through the years of its actual practice and by filed declaration with the commission.

Sec. 196.03 (1), Stats., provides:

"Every public utility is required to furnish reasonably adequate service and facilities. . . ."

Appellants contend that the scope of the utility's undertaking once having been assumed, its privileges received, and its corresponding obligations and duties to render service to the public thereby created, it cannot be diminished by the utility's declaration either with or without the commission's approval, except as abandonment of service or facilities may be authorized in a proceeding under sec. 196.81, Stats. Said section provides:

"No public utility or railroad as defined in chapters 195 and 196 shall abandon or discontinue any line, branch line or extension or service thereon without first securing the approval of the commission. . . ."

The plaintiff utility has made no application for such abandonment or discontinuance of service, unless it be considered

that its application of April 10, 1943, was addressed to the commission for that purpose; if so, the application was disapproved.

The respondent relies considerably on the commission's decision in the so-called "bowling-alley case." That arose in 1922 when the proprietors of a bowling alley made a request for heating service. The utility declined to give service, and an application was made to the then railroad commission. In its decision the commission said:

"Heating utilities are by the nature of the products furnished materially different from electric, gas or water utilities, and the question of extending heating service cannot be governed by the broad general principles applicable to other service utility extensions."

The commission further said:

"The commission does not feel that the situation here presented would justify an order requiring the respondent [utility] to enlarge its distribution system so as to take on additional customers because of the large expense incident thereto and the heavy additional burden which might be presented on not only the existing consumers but prospective consumers in the way of inevitably increased rates."

The legislature has made no distinction because of the nature of the utility as a basis for classification or regulation, and it is not within the province of the commission to do so. See *United Parcel Service v. Public Service Comm.* 240 Wis. 603, 4 N. W. (2d) 138.

The trial court found the order under review unreasonable because additional service is not available without the expenditure of large sums of money upon which no return could be expected. This finding is clearly against the great weight and clear preponderance of the evidence. Presently we are concerned with service to the Murphy residence. The utility's lateral in the Murphy alley, which serves the McGarty resi-

dence, has been there for some forty-odd years. According to the utility's engineering witnesses, the normal expectancy of life for a pipe of this sort has already been exceeded. These witnesses explained that the deterioration of these pipes not only limits the depreciation of their useful life but also results in a progressive functional impairment during their useful life; this because of an interior incrustation and breaking down of the inner wall of the pipe. It appears that the utility has a balance in its depreciation-reserve account of over $86,000. Every public utility is required to furnish reasonable service and facilities, and is permitted to accumulate a depreciation reserve for that purpose. The cost of replacement of the pipe is chargeable not to the addition of Murphy as a customer, but to the depreciation reserve which has been accumulated through the years.

In *Fort Smith Light & Traction Co. v. Bourland,* 267 U. S. 330, 332, 45 Sup. Ct. 249, 69 L. Ed. 631, the court said:

"A public utility cannot, because of loss, escape obligations voluntarily assumed. *Milwaukee Electric Ry. Co. v. Milwaukee,* 252 U. S. 100, 105 [165 Wis. 230, 161 N. W. 745; 166 Wis. 163, 164 N. W. 844]. The fact that the company must make a large expenditure in relaying its tracks does not render the order void. Nor does the expected deficit from operation affect its validity. A railway may be compelled to continue the service of a branch or part of a line, although the operation involves a loss. *Missouri Pacific Ry. Co. v. Kansas,* 216 U. S. 262, 279; *Chesapeake & Ohio Ry. Co. v. Public Service Comm.* 242 U. S. 603, 607. Compare *Railroad Comm. v. Eastern Texas R. R. Co.* 264 U. S. 79, 85. This is true even where the system as a whole fails to earn a fair return upon the value of the property."

In *New York ex rel. Woodhaven Gas Light Co. v. Public Service Comm.* 269 U. S. 244, 46 Sup. Ct. 83, 70 L. Ed. 255; the gas company challenged the validity of an order of the Public Service Commission on the ground that it confiscated the company's property; was arbitrary and capricious, and

therefore repugnant to the due-process clause of the Fourteenth amendment. The order of the Public Service Commission required the utility to extend its facilities into certain communities within the utility's franchise area. At page 249 the court said:

"But the company construes the order to require it to sell gas in the added communities at the existing rate; and it insists that, as the rate is so low that present consumers must be served at a loss, the addition of new territory will increase the loss. Even assuming that one dollar, fixed as the maximum rate, is noncompensatory, it does not follow that the order in question is unreasonable or invalid. This case is to be distinguished from a suit to restrain the enforcement of legislation prescribing a confiscatory rate. Here, the rate is not involved. The order directs the extension; it does not deal with compensation. The commission reasonably might assume that the company will take appropriate steps to save its property from confiscation. *Newton v. Consolidated Gas Co.* 258 U. S. 165, 174, 177. . . . The company's contention cannot be sustained."

The trial court found that the order is unreasonable because the extension of plaintiff's system is not in a substantial public interest. The order should not be so interpreted. It does not require any extension of the utility system. All that is required is the reconnection of the service from an existing main. The utility's system will not be physically extended beyond its present limits. Sec. 196.37 (2), Stats., provides:

"Whenever the commission shall find . . . that any service which can be reasonably demanded cannot be obtained, the commission shall determine and by order fix reasonable . . . service to be furnished, . . . and shall make such other order respecting such . . . service as shall be just and reasonable."

The legislature lays down no test of substantial public interest on which the commission must predicate its orders under this statute. By the enactment of the Public Utility Act

(ch. 196, Stats.) the legislature has determined that the public interest requires that public utilities shall, within their undertaking, furnish their service to all who reasonably require the same. The heating of the Murphy residence was and is within the utility's profession of service. The order directing such service is not unreasonable or unlawful on any of the grounds on which it was so held by the trial court.

*By the Court.*—Judgment reversed. Cause remanded with directions to affirm the order of the Public Service Commission.