Weyauwega Telephone Company and another, Respondents, v. Public Service Commission, Appellant.*

*October 5—October 31, 1961.*

---

\* Motion by respondents for rehearing denied, without costs, on December 29, 1961.

For the appellant the cause was argued by *William E. Torkelson,* chief counsel, with whom on the briefs was *John W. Reynolds,* attorney general.

For the respondent Weyauwega Telephone Company there was a brief by *Petersen, Sutherland, Axley & Brynelson* of Madison, and oral argument by *Floyd A. Brynelson.*

For the respondent Wisconsin Telephone Company there was a brief by *Francis J. Hart,* attorney, and *William E.*

*McGavick* and *John R. Collins* of counsel, all of Milwaukee, and oral argument by *Mr. Collins* and *Mr. McGavick.*

A brief *amicus curiae* was filed by *George G. Blake* and *Aberg, Bell, Blake & Metzner,* all of Madison, for the Wisconsin State Telephone Association.

CURRIE, J. As we view it, four questions are presented on this appeal:

(1) Does Wis. Tel. Co. have an indeterminate permit to provide telephone service in the town of Royalton which imposes upon it a correlative duty to extend service anywhere in the town that the PSC may properly find to be required by public convenience and necessity?

(2) What is the effect of the exchange-area map, filed by Wis. Tel. Co. pursuant to the PSC order authorizing the filing of such maps, upon Wis. Tel. Co.'s undertaking?

(3) If question (1) is answered in the negative, has there been any undertaking by Wis. Tel. Co. to extend service throughout the unincorporated community?

(4) Is there substantial evidence in view of the entire record to support the PSC finding that public convenience and necessity requires Wis. Tel. Co. to extend service as provided in the commission's order?

*Existence and Extent of Indeterminate Permit.*

It is a fundamental principle of public utility law that a public utility is required to serve only within the scope of its undertaking, or profession of service. *Milwaukee v. Public Service Comm.* (1954), 268 Wis. 116, 120, 66 N. W. (2d) 716; 1 Wyman, Public Service Corporations, p. 219, sec. 250.

A public utility may make a profession of service in several ways. One is by the acceptance of a franchise which gives it the right to serve in a certain specified area. 43 Am.

Jur., Public Utilities and Services, pp. 586, 587, sec. 22, and pp. 601, 602, sec. 47; 1 Wyman, Public Service Corporations, p. 179, sec. 212. In Wisconsin, public-utility franchises have been converted into indeterminate permits. Sec. 196.01 (5), Stats. This court recognized in *Northern States Power Co. v. Public Service Comm.* (1944), 246 Wis. 215, 224, 16 N. W. (2d) 790, that an obligation to extend service may arise by acceptance of and operation under an indeterminate permit.

The crucial question is whether Wis. Tel. Co. did accept and operate under a franchise in the nature of an indeterminate permit applying to the town of Royalton. If it did, we are satisfied that under the foregoing authorities it could be compelled to extend telephone service anywhere in the town that the PSC might order under a proper finding of public convenience and necessity.

Respondents Wis. Tel. Co. and Weyauwega espouse entirely different theories on the question of whether Wis. Tel. Co. operates under an indeterminate permit in the town of Royalton. Wis. Tel. Co. takes the position that it is impossible for a telephone utility to acquire an indeterminate permit within the limits of a town. On the other hand, Weyauwega concedes that Wis. Tel. Co. is operating in the town under an indeterminate permit, but contends that the area to which such permit extends is confined to that in which it has made a profession of service as evidenced by its exchange-area map filed with the PSC.

The PSC grounds its contention, that Wis. Tel. Co. has accepted and is operating in Royalton under a town-wide indeterminate permit, upon sec. 182.017, Stats.,[1] and the

---

[1] Subs. (1) and (7) of sec. 182.017 provide:

"(1) *Right of way for.* Any domestic corporation organized to furnish telegraph, telephone, service or transmit heat, power, or electric current to the public or for public purposes, and any co-operative association organized under chapter 185 to furnish telegraph, telephone or transmit heat, power or electric current to its

holding of this court in *Kenosha v. Kenosha Home Tele-phone Co.* (1912), 149 Wis. 338, 135 N. W. 848. Subs. (1) and (7) of sec. 182.017 were formerly part of sec. 180.17, which was sec. 1778 prior to the renumbering under the decimal system. Sec. 1778, first enacted in 1851, contained substantially the same language as present sub. (1) of sec. 182.017. The provision of present sub. (7) was not added by the legislature until 1905. The particular holding in the *Kenosha Case,* relied upon by the PSC, was thus stated by the court (p. 340) :

"The first question presented by the appeal is, Was the ordinance of March, 1903, purporting to grant to the Citizens Telephone & Telegraph Company the right to operate a general telephone system in the city of Kenosha, valid as a franchise? This court has repeatedly answered the question in the negative. *The only franchise needed by a telephone company to enable it to conduct its business anywhere within the state is the franchise conferred upon it by virtue of sec. 1778, Stats., when it is incorporated pursuant thereto.* [Citing cases.]" (Emphasis supplied.)

The Wisconsin Public Utility Law was originally enacted as ch. 499, Laws of 1907. Sec. 1797m–1(5) of this act provided for the transformation of certain public-utility franchises into indeterminate permits. Present sec. 196.01

members, may, subject to reasonable regulations made by any city or village through which its transmission lines or systems may pass, construct and maintain such lines or systems with all necessary appurtenances in, across, or beneath any public highway or bridge or any stream or body of water, or upon any lands of any owner consenting thereto, and for such purpose may acquire lands or the necessary easements; and may connect and operate its lines or system with other lines or systems devoted to like business, within or without this state, and charge reasonable rates for the transmission and delivery of messages or the furnishing of heat, power, or electric light.

"(7) *Municipal franchise required.* No lighting or heating corporation shall have any right hereunder in any city or village until it has obtained a franchise or written consent for the erection or installation of its lines from such city or village."

(5), Stats., is the successor to this statute.[2] As originally enacted, sec. 1797m–1 (5) did not apply to telephone utilities. This was because express statutory language limited it to "grants, directly or indirectly, from the state . . . to own, operate, manage, or control any plant or equipment . . . within this state for the production, transmission, delivery, or furnishing of heat, light, water, or power, . . ." Thus, telephone utilities were not expressly included. In 1929, by means of a Revisor's bill this statute was amended to read "any public utility," in which form it was substantially the same as present sec. 196.01 (5).

In 1930 the attorney general ruled that under the holding of the *Kenosha Case* any utility company organized under sec. 180.17 (now sec. 182.017), Stats., acquires an indeterminate permit upon entering a town for the purpose of rendering utility service, if no other utility already is operating in the town under an indeterminate permit. See 19 Op. Atty. Gen. 378. This is essentially the present contention of the PSC, except it also maintains that, if a second telephone utility obtains a certificate of convenience and necessity to operate in the town, such second telephone utility also operates in the town under an indeterminate permit.

However, this opinion of the attorney general and the present contention of the PSC were rejected by this court in *South Shore Utility Co. v. Railroad Comm.* (1932), 207 Wis. 95, 240 N. W. 784. There the railroad commis-

---

[2] Sec. 196.01 (5) provides:

" 'Indeterminate permit' means and embraces every grant, directly or indirectly, from the state to any public utility, of power, right, or privilege to own, operate, manage, or control any plant or equipment or any part of a plant or equipment within this state for the production, transmission, delivery, or furnishing of any public utility service, and such permit shall continue in force until the municipality shall exercise its option to purchase, or until it shall be otherwise terminated according to law."

sion had determined that the first electric utility to enter a town and render service thereby obtained an indeterminate permit which continued after the part of the town in which it served was incorporated as a village. The railroad commission ordered that a second electric utility, which had obtained a franchise from the village, cease and desist from rendering service in the village. The statute under which the first utility sought relief was sec. 196.50 (1). A history of sec. 196.50, stating its wording at different periods, is set forth in an appendix at the end of this opinion. At the time the *South Shore Case* arose, this statute read in part as follows:

"No license, permit, or franchise shall be granted to own, operate, manage, or control any plant or equipment for the conveyance of telephone messages, or for the production, transmission, delivery, or furnishing of heat, light, water, or power in any municipality, where there is in operation *under an indeterminate permit* a public utility engaged in similar service, without first securing from the commission a declaration, after a public hearing of all parties interested, that public convenience and necessity require such second public utility." (Italics supplied.)

Because of this statutory language, the outcome of the *South Shore Case* turned on whether the first utility had possessed an indeterminate permit to operate in the town. Unless it had, the statute afforded no protection. This court held that it did not possess such an indeterminate permit. In disposing of the respondents' argument, that an indeterminate permit arose by reason of sec. 180.17 (now sec. 182.017), Stats., the court declared (p. 105):

"There would be much plausibility in respondents' contention if the legislature had not enacted a public utility law which appears to be as full, complete, and comprehensive as the legislature intended it to be. Sec. 180.17 is found in ch. 180, Stats., which relates to domestic corporations. Obviously the legislature has failed to provide how, if at all,

indeterminate permits are acquired in towns. This also is of great significance when it is considered that the public utility law has, since its original enactment, been repeatedly amended. We do not feel that the contentions of respondents as to the effect of sec. 180.17 are so clear as to warrant us in upholding them."

We construe this language of the court to mean that, in order for a grant of a power, right, or privilege by the state to a public utility to constitute an indeterminate permit within the meaning of the Public Utility Law, the same must be traceable to some provision of that law and resort cannot be made to some statute without that law, such as sec. 180.17 (now sec. 182.017), Stats. As pointed out elsewhere in the *South Shore* opinion, there was no provision in the Public Utility Law for the granting of any power, right, or privilege to an electric utility covering its operations in a town.

However, this is not the situation with respect to telephone utilities. Sub. (2) of sec. 196.50, Stats., does provide for a direct grant by the state of a right and privilege to these public utilities.[3] This subsection protects the first telephone utility to operate in a town against the entrance and operation of any other telephone utility anywhere within the town. This is done by requiring such second utility to give notice to the PSC (formerly the railroad commission) stating the installation it proposes to make, and granting the commission the power to prohibit such proposed installation by finding, within twenty days after the giving of the notice, that public convenience and necessity do not require such installation. If two or more telephone utilities are already operating in a town, each is protected against extension or installation of additional service in the town by the requirement that notice be given to the commission of the proposed extension or installation and by the com-

[3] This subsection is set forth in the appendix.

mission's power to veto the same by finding it not required by public convenience and necessity.

The *Kenosha Case* holds that sec. 182.017 (1), Stats., confers a franchise to operate anywhere within the state upon a telephone public utility incorporated thereunder. We are satisfied that the granting of such a franchise by the state results in no correlative duty on the part of the utility to extend service anywhere in the state. This is because we consider it unfair to imply a profession to serve in so extensive an area from the mere acts of accepting such a corporate franchise and commencing to operate somewhere in the state. We have found no cases from other jurisdictions which have applied such principle on a statewide basis.

However, when the legislature amended sec. 1797m–74 (now sec. 196.50), Stats., so as to give a telephone utility the afore-described protection on a town-area basis, the effect was to localize the former state-wide franchise possessed by it. Because the franchise benefits were given on a town basis by such 1913 amendment (now sub. (2) of sec. 196.50), the law implies a correlative duty to provide service anywhere in the town that the PSC may properly find public convenience and necessity require it.

This conclusion is reinforced by two prior decisions, one of this court and one of the PSC. The facts involved in *Lodi Telephone Co. v. Public Service Comm.* (1952), 262 Wis. 416, 55 N. W. (2d) 379, 57 N. W. (2d) 700, are very similar to those in the instant case. In that case the court upheld a PSC order requiring the Commonwealth Telephone Company to extend service in a town in which the Lodi Telephone Company also rendered service. However, the order was not attacked on the ground that such an extension exceeded Commonwealth's profession of service. Nevertheless, the following statement of this court is significant (p. 424):

"We agree with the learned trial judge, who said:

" 'Commonwealth was in the rural town. Lodi was in the rural town. Each had an obligation to render adequate service. If it had an indeterminate permit, its obligation was coextensive with its right.' "

Also, in *Wichman v. Wood County Telephone Co.* (1952), 37 P.S.C.W. 112, 121, the commission stated that:

"The question has been raised as to the obligation of a telephone company to extend service in towns. The commission is of the opinion that the right to serve carries with it an equal duty to serve. If a telephone utility has the right to serve in a particular town, it has a duty to serve in that town, subject to reasonable conditions of extension to be provided in its lawfully filed extension rules and subject further to the requirements of sec. 196.50, Stats., where another telephone utility is serving in the same town."

The correlative duty to extend service on a town-wide basis is necessarily limited to a telephone utility which either commenced to operate in the town after the 1913 amendment of sec. 1797m–74 (now sec. 196.50), Stats., or, having operated in the town prior to that time, thereafter extended its lines therein. This is because implicit in the principle of a correlative duty to provide service based upon acceptance of a franchise is the idea of a voluntary act on the part of the utility in accepting the franchise. A utility entering a town and providing service after the 1913 enactment can logically be deemed to accept the town-wide franchise, and must take the burdens as well as the advantages thereof. However, this is not the case where the telephone utility was already operating in the town at the time the 1913 amendment was enacted. The latter situation lacks any voluntary act by the utility to accept a town-wide franchise. Thus, to compel it to extend its lines in the town against its will would violate the due-process clause

of the Fourteenth amendment. *Valcour v. Morrisville* (1936), 108 Vt. 242, 184 Atl. 881. The only way such a utility could have declined to accept the town-wide franchise, with its resulting burdens, would have been to cease to operate in the town, and this it could not have done because it was already under a profession to render adequate service to the customers it was then serving in the town. Therefore, no acceptance of the franchise can be inferred from its mere continuance to render service in the town after the date of the 1913 enactment, and no town-wide correlative duty can be found from such continuance.

We deem the fact, that a town-wide franchise was not technically labeled an indeterminate permit by sec. *1797m–1* (5) (now sec. 196.01 (5)), Stats., until amendment of the statute in 1929, to be immaterial. The franchise was indeterminate in character by its inherent nature, because it was subject to termination by the legislature at any time. Cf. *Superior Water Light & Power Co. v. Superior* (1921), 174 Wis. 257, 284, 181 N. W. 113, 183 N. W. 254, reversed on other grounds, 263 U. S. 125, 44 Sup. Ct. 82, 68 L. Ed. 204. It should also be pointed out here that the legislature did not employ the term "indeterminate permit" in sub. (2) of sec. 196.50, and its predecessor statute, although it did employ it in sub. (1) of such statute.

Our conclusion requires that we expressly withdraw, in so far as it applies to telephone utilities, the following dictum in *Milwaukee v. Public Service Comm.* (1942), 241 Wis. 249, 256, 5 N. W. (2d) 800: "It is held in *South Shore Utility Co. v. Railroad Comm.* that there is no such thing as an indeterminate permit in a town, . . ." This is undoubtedly a true statement of the law as it stood with respect to electric utilities when the *South Shore Case* was decided, and with respect to water utilities when *Milwaukee v. Public Service Comm.* was decided. However, in neither of these cases was the court concerned with sub. (2) of sec.

196.50, Stats., which, when construed together with sec. 182.017, does grant telephone utilities an indeterminate permit to operate in towns.

The two respondent utilities further rest their argument, that it is impossible for a telephone utility to possess an indeterminate permit in a town, upon the wording of the last sentence of sec. 196.50 (2), Stats., which provides:

"Any public utility operating any telephone exchange in any city or village shall, on demand, extend its lines to the limits of such city or village for the purposes mentioned and subject to the conditions and requirements prescribed in secs. 196.04 and 196.19 subs. (4) and (5)."

It is contended that under the canon of statutory construction, *expressio unius est exclusio alterius,* this statutory language precludes an interpretation of the Public Utility Law which would empower the PSC to order a telephone utility to extend its service in a town. We deem this argument to be grounded upon the fallacious interpretation that the word "demand," as used in the quoted sentence, has reference to the PSC. A more-reasonable interpretation is that "demand" refers to a prospective customer or to the village board or city council.[4] Therefore, invoking this canon in construing the quoted sentence would only result in precluding a prospective customer, or the town board, from having the absolute right to demand an extension of service by a telephone utility in a town. This would not preclude the PSC from exercising its statutory power under secs. 196.03 (1) and 196.37 (2), Stats.,[5]

[4] Sec. 196.58 (2), Stats., expressly authorizes a municipal council to require a utility to extend reasonable service within the municipality.

[5] Sec. 196.03 (1), Stats., requires every public utility "to furnish reasonably adequate service and facilities." Sec. 196.37 (2) empowers the PSC to determine and by order fix reasonable service to be furnished by a public utility whenever it finds the service being furnished is inadequate.

to require an extension of service in a town by a telephone utility when public convenience and necessity so require and when a duty rests upon the utility to provide such extended service. The obligation to provide an extension of service only when the PSC properly determines that the standards of public convenience and necessity require it is very different than the absolute duty of having to extend service on the demand of some individual or municipal council. Furthermore, respondents concede that the PSC does possess the power to compel a telephone utility to extend service in a town to the extent of the territory embraced in its filed exchange-service map.

The record is silent in this case as to when Wis. Tel. Co. first commenced to render telephone service in the town of Royalton. Resort to taking judicial notice of the PSC files has proved of no assistance. These files show that in 1930 Wis. Tel. Co. acquired the properties of a predecessor telephone utility then operating in the town, but do not disclose when such predecessor had first commenced to operate in the town. In acquiring the properties of the predecessor utility, Wis. Tel. Co. succeeded to all the franchise rights of the latter, and assumed all the obligations of such franchise. *Calumet Service Co. v. Chilton* (1912), 148 Wis. 334, 353, 135 N. W. 131.

Therefore, whether Wis. Tel. Co. has a correlative duty to extend telephone service in the town of Royalton, arising from acceptance of a franchise applicable to the town, is dependent upon whether one of its predecessors, to whose rights it has succeeded, was rendering service in the town prior to the 1913 amendment of sec. *1797m–74*, Stats. If such service was being rendered, then Wis. Tel. Co. has no present obligation to extend its service unless either Wis. Tel. Co. or a predecessor extended its lines in the town after the 1913 amendment or proposed an extension in its filed exchange-area map.

## Effect of Filing Exchange-Service Map.

On December 10, 1942, the PSC entered an order making it optional for any public utility to file with the PSC a statement accompanied by an exchange-area map "indicating the territory in any town or towns of this state in which said telephone utility presently proposes, subject to its filed extension rules, to make extensions of its lines and service at any time when such service may be requested or demanded by any person within the territory as thus designated." [6] The order further provided that, unless the commission within sixty days after the presentation of this statement and map should find that any of the proposed extensions of service are not required by public convenience and necessity, the filing of the statement and accompanying map should be deemed full compliance by the utility with the notice requirements of sec. 196.50 (2), Stats. The order also contained this significant provision:

"Neither the presentation nor the filing of any statement and map pursuant to the provisions of this order shall be determinative of the restriction of the undertaking of service of the utility presenting the same to service within the territory designated in such statement and map, nor shall it be construed as limiting any statutory power of the commission."

The proceeding which resulted in the promulgation of this order was initiated by a petition filed by the Wisconsin State Telephone Association, of which more than 90 per cent of this state's telephone utilities were members. This petition requested that an order be entered providing that, where possible, all telephone utilities in the state enter into agreements fixing their exchange-area boundaries, and, in

---

[6] Proceeding 2–U–1840, 27 P.S.C.W. 9, 17 (1942). This order is printed in 1950 Red Book, 419, and 5 Wis. Adm. Code, ch. PSC 166. Supplemental orders were entered effective May 11, 1943, and June 23, 1946, which did not change the wording of the original order but merely added forms and procedural explanation.

case of disagreement, that the PSC establish the boundaries. The PSC filed an opinion in the matter in which it explained why the relief requested was denied. The opinion stated that (27 P.S.C.W., p. 15):

"A determination and an exact definition of the territorial scope of any utility's undertaking of service would often be advantageous from the standpoint of utility management as well as of regulation. But such undertakings neither are nor ought to be static; and, moreover, their territorial scope is not always what the utility management at any particular time may think or claim that it is. We do not think that the territorial scope of the separate undertakings of two or more telephone utilities operating in a single town of this state is properly the subject of bargain or compromise as between such utilities alone."

The PSC opinion also stated that the twenty-day notice period of sec. 196.50 (2), Stats., was entirely inadequate to permit the commission to investigate and determine whether a proposed extension met the requirement of public convenience and necessity. The only stated objective of the order was to obviate this unsatisfactory notice procedure by substituting, on a voluntary basis, the one set forth in the order.

From the foregoing, it is clear that the filing of an exchange-area map by Wis. Tel. Co. as authorized by the PSC order of December 10, 1942, in no way limited any obligation on its part, to extend service in the town of Royalton, which may have arisen from its indeterminate permit.

*Undertaking to Serve Independent of Acceptance of Indeterminate Permit.*

The PSC, in its opinion filed with the instant order, stated:

"If the community of Royalton was incorporated all three telephone utilities serving in the community would be re-

quired under sec. 196.50 (2), Stats., to extend service upon demand to the limits of the village to fill applications for service. In the past the commission has taken the position in somewhat-similar cases that an unincorporated community may properly be treated as an incorporated community in so far as extensions of telephone service are concerned, where more than one company serves the community."

In the absence of a correlative obligation by Wis. Tel. Co. to extend service in the town of Royalton arising from its acceptance of an indeterminate permit in the town, we hold that extension of service to a part of an unincorporated urban community does not constitute a profession to serve the entire community. Therefore, in such a situation the PSC would possess no power to compel extension of service to other parts of the community whenever a prospective user should so demand. The legislature has restricted the duty of a telephone utility to provide service upon demand of a prospective user to cities and villages. For the PSC to extend the requirement to unincorporated urban communities would be an act of unauthorized legislation on its part.

### Substantial Evidence to Sustain the Order.

Under sec. 227.20 (1) (d), Stats., a reviewing court may not reverse an administrative agency order on the ground that it is unsupported by the evidence if there is "substantial evidence in view of the entire record as submitted" which supports it.

The testimony of all the petitioner-witnesses, including those now receiving Weyauwega service, was that they had no community of interest with the village of Weyauwega, where Weyauwega's exchange is located, but did have a community of interest with New London, where Wis. Tel. Co.'s exchange is situated. This community of interest

was evidenced by the fact that New London was the locality in which their employment, banking, medical, and social activities were most frequently conducted. Furthermore, they testified that the great majority of their shopping and patronizing of professional men was done in New London. Also, the evidence showed that the business district and churches in the unincorporated community of Royalton are in the "open territory" being serviced by both Wis. Tel. Co. and Manawa, while the residence district, in which the 15 petitioners reside, is serviced by Weyauwega; and that Weyauwega patrons have to pay toll charges to communicate with that portion of the community located across the river.

In determining whether this evidence supports the commission's finding that public convenience and necessity require the extension of service to the 15 petitioners, the factors which constitute public convenience and necessity must be considered. One of these factors is the inadequacy of present service—in this case, that being supplied by Weyauwega. The evidence above recounted relates to this factor and substantially establishes that Wis. Tel. Co. service would more adequately meet the needs of petitioners than service by Weyauwega. The fact, that Weyauwega patrons residing in the unincorporated community of Royalton could secure foreign-exchange service which would enable them to call New London without passing through the Weyauwega exchange, does not require the PSC to find that public convenience and necessity would be satisfied by such a substitute. *Lodi Telephone Co. v. Public Service Comm., supra.*

Another factor to be considered is whether the proposed extension would entail a duplication of lines. However, this factor is not controlling. *Lodi Telephone Co. Case, supra.* A further factor is the effect of loss of subscribers on the utility presently rendering service, with possible adverse

effect upon the service that such utility can give to its remaining patrons. Id. Still another factor is whether the cost of extending the lines by the utility whose service is sought would be disproportionate to the revenue to be derived from new customers secured as a result thereof. The evidence presented on these two last-mentioned factors was not such as to require a reviewing court to find that it outweighed the need for providing the petitioners with more-adequate service.

The weighing of these various factors is a policy function which lies peculiarly within the province of the PSC. If there exists any reasonable basis in the evidence for the determination made by the commission, a reviewing court should not disturb it. Here there was substantial evidence that in order to provide the 15 petitioners with adequate service it was necessary that Wis. Tel. Co. extend its lines into the portion of the unincorporated community lying southwest of the river. The resulting loss to Weyauwega and burden imposed upon Wis. Tel. Co. were not such as to render unreasonable the PSC's finding that public convenience and necessity required the extension.

### Mandate to be Entered.

This court's determination of some of the pertinent questions of law differs from that of the trial court. The judgment below remanded the matter to the PSC for further proceedings in accordance with the decision of the trial court. It is, therefore, necessary that the judgment be modified so that the remand be for further proceedings in accordance with this court's opinion.

*By the Court.*—Judgment modified so that the remand for further proceedings be in accordance with this opinion and, as so modified, the judgment is affirmed.

# APPENDIX.

*History of Present Subsections 196.50 (1) and (2) and Predecessor Statutes.*

## I.

Sec. 1797m–74, Stats., the predecessor of sec. 196.50, was enacted in ch. 499, Laws of 1907, as part of the original Wisconsin Public Utility Law. As so enacted it read:

"1. No license, permit, or franchise shall be granted to any person, copartnership, or corporation to own, operate, manage, or control any plant or equipment for the production, transmission, delivery, or furnishing of heat, light, water, or power in any municipality where there is in *operation under an indeterminate permit* as provided in this act a public utility engaged in similar service without first securing from the commission a declaration after a public hearing of all parties interested, that public convenience and necessity require such second public utility.

"2. Any existing permit, license, or franchise which shall contain any term whatsoever interfering with the existence of such second public utility is hereby amended in such a manner as to permit such municipality to grant an indeterminate permit for the operation of such second public utility pursuant to the provisions of this act.

"3. No municipality shall hereafter construct any such plant or equipment where there is in operation under an indeterminate permit as provided in this act, in such municipality a public utility engaged in similar service, without first securing from the commission a declaration, after a public hearing of all parties interested, that public convenience and necessity require such municipal public utility. But nothing in this section shall be construed as preventing a municipality acquiring any existing plant by purchase or by condemnation as hereinafter provided.

"4. Nothing in this section shall be construed so as to prevent the granting of an indeterminate permit or the construction of a municipal plant where the existing public

utility is operating without an indeterminate permit as provided in this act." (Italics supplied.)

## II.

### *Ch. 546, Laws of 1911.*

This chapter amended secs. 1797m–4 and 1797m–30, Stats., so as to provide for physical connection by telephone companies and also amended sec. 1797m–74 to read as follows:

"[Section 1797m–74] 1. No license, permit, or franchise shall be granted to any person, copartnership, or corporation to own, operate, manage, or control any plant or equipment for the production, transmission, delivery, or furnishing of heat, light, water, or power in any municipality, where there is in operation under an indeterminate permit, as provided in this act, a public utility engaged in similar service, *and no telephone exchange for furnishing local service to subscribers within any village or city shall be installed in such village or city by any public utility, other than those already furnishing such telephone service therein, where there is in operation in such village or city a public utility engaged in similar service,* without first securing from the commission a declaration after a public hearing of all parties interested, that public convenience and necessity require such second public utility. *This subsection shall not prevent or impose any condition upon the extension of any telephone line from any town into or through any city or village for the purpose of connecting with any telephone exchange in such city or village or connecting with any other telephone line or system. Any public utility operating any telephone exchange in any city or village shall, on demand, extend its lines to the limits of such city or village for the purposes mentioned and subject to the conditions and requirements prescribed in sections 1797m–4 and 1797m–30."*

There were certain subsequent amendments for purposes of renumbering in ch. 663, sec. 359, and ch. 664, sec. 118, Laws of 1911.

### III.

*Ch. 610, Laws of 1913.*

' This chapter reads as follows:

"Section 1. Subsection 1 of section 1797*m*–74 of the statutes is amended to read: (Section 1797*m*–74). 1. No license, permit, or franchise shall be granted to any person, copartnership, or corporation, to own, operate, manage, or control any plant or equipment *for the conveyance of telephone messages,* or for the production, transmission, delivery, or furnishing of heat, light, water, or power in any municipality, where there is in operation under an indeterminate permit, as provided in sections 1797*m*–1 to 1797*m*–109, inclusive, a public utility engaged in similar service, . . . without first securing from the commission a declaration, after a public hearing of all parties interested, that public convenience and necessity require such second public utility. This subsection shall not prevent or impose any condition upon the extension of any telephone *toll* line from any . . . *municipality* into or through any . . . *municipality* for the purpose of connecting with any telephone exchange in such . . . *municipality* or connecting with any other telephone line or system.

' "*No public utility already engaged in furnishing telephone service shall install or extend any telephone exchange for furnishing local service to subscribers in any municipality where there is in operation a public utility engaged in similar service, without first having served notice in writing upon the commission and any other public utility already engaged in furnishing local service to subscribers in such municipality of the installation or extension of such exchange which it proposes to make, or make such installation or extensions if the commission, within twenty days after the service of such notice, shall, upon investigation, find and declare that public convenience and necessity do not require the installation or extensions of such exchange, except that any public utility already engaged in furnishing local service to subscribers within any city or village may extend its exchange within such city or village without the authority of the commission.*

"Any public utility operating any telephone exchange in any city or village shall, on demand, extend its lines to the limits of such city or village for the purposes mentioned and subject to the conditions and requirements prescribed in sections 1797*m*–4 and 1797*m*–30."

### IV.

*Ch. 291, Laws of 1923.*

This renumbers sec. 1797*m*–74, Stats., as sec. 196.50.

### V.

*Ch. 532, Laws of 1927.*

This creates sec. 196.50 (5), Stats., with the apparent purpose of modifying the rule of *Commonwealth Telephone Co. v. Carley* (1927), 192 Wis. 464, 213 N. W. 469.

### VI.

*Ch. 504, Laws of 1929.*
*(A Revisor's bill.)*

Sec. 275 of the above amends sec. 196.50, Stats., to read as follows:

"(1) *Certificate of necessity.* No license, permit, or franchise shall be granted . . . to own, operate, manage, or control any plant or equipment for the conveyance of telephone messages, or for the production, transmission, delivery, or furnishing of heat, light, water, or power in any municipality, where there is in operation under an indeterminate permit . . . a public utility engaged in similar service, without first securing from the commission a declaration, after a public hearing of all parties interested, that public convenience and necessity require such second public utility. This subsection shall not prevent or impose any condition upon the extension of any telephone toll line from any municipality into or through any municipality for the purpose of connecting with any telephone exchange in such

municipality or connecting with any other telephone line or system.

"(2) *Telephones, extension.* No public utility . . . furnishing telephone service shall install or extend any telephone exchange for furnishing local service . . . in any . . . *town* where there is . . . a public utility engaged in similar service, without first having served notice in writing upon the commission and . . . *such* other public utility . . . of the installation or extension of such exchange which it proposes to make, or make such installation or extensions if the commission, within twenty days after the service of such notice, shall, upon investigation, find and declare that public convenience and necessity do not require the installation or extensions of such exchange. . . . Any public utility already engaged in furnishing local service to subscribers within any city or village may extend its exchange within such city or village without the authority of the commission. Any public utility operating any telephone exchange in any city or village shall, on demand, extend its lines to the limits of such city or village for the purposes mentioned and subject to the conditions and requirements prescribed in sections 196.04 and 196.19 subsections (4) and (5).

"(3) *Second utility.* . . . Any . . . permit, license, or franchise which shall contain any term whatsoever interfering with the existence of . . . *a* second public utility is hereby amended in such manner as to permit . . . *any* municipality to grant . . . *a franchise* for the operation of such second public utility. . . .

"(4) *Municipality restrained.* . . . No municipality shall hereafter construct any . . . *public utility* where there is in operation under an indeterminate permit . . . in such municipality a public utility engaged in similar service, without first securing from the commission a declaration, after a public hearing of all parties interested, that public convenience and necessity require such municipal public utility. . . .

"(5) *Injunction.* Pending investigation and finding by the commission as to whether public convenience and necessity require . . . *a* second utility, the furnishing of any public utility service . . . in any municipality contrary to the provisions of this section may be enjoined . . . at the

suit of the state or of any public utility having an interest therein."

The Revisor's note to this section in the original bill (No. 100, S., 1929 session) states:

"Note: (2) does not apply to cities or villages. Utilities now operate under indeterminate permits; see 196.55; (4) is needless."

## VII.

*Present subsections (1) and (2) of sec. 196.50, Stats.*

"(1) *Certificate of necessity.* No license, permit, or franchise shall be granted to own, operate, manage, or control any plant or equipment for the conveyance of telephone messages, or for the production, transmission, delivery, or furnishing of heat, light, water, or power in any municipality, where there is in operation under an indeterminate permit a public utility engaged in similar service, without first securing from the commission a declaration, after a public hearing of all parties interested, that public convenience and necessity require such second public utility. This subsection shall not prevent or impose any condition upon the extension of any telephone toll line from any municipality into or through any municipality for the purpose of connecting with any telephone exchange in such municipality or connecting with any other telephone line or system.

"(2) *Telephones, extension.* No public utility furnishing telephone service shall install or extend any telephone exchange for furnishing local service in any town where there is a public utility engaged in similar service, without first having served notice in writing upon the commission and such other public utility of the installation or extension of such exchange which it proposes to make, or make such installation or extensions if the commission, within twenty days after the service of such notice, shall, upon investigation, find and declare that public convenience and necessity do not require the installation or extensions of such exchange. Any public utility already engaged in furnishing local service to subscribers within any city or village may extend its exchange within such city or village without the

authority of the commission. Any public utility operating any telephone exchange in any city or village shall, on demand, extend its lines to the limits of such city or village for the purposes mentioned and subject to the conditions and requirements prescribed in sections 196.04 and 196.19 subsections (4) and (5)."

BROADFOOT, J. (*dissenting*). I cannot agree with the majority of the court in this case. The Public Service Commission is an administrative agency and it has only such power as has been delegated to it by the legislature. It cannot increase its power and authority by rule or by its own construction of the statutes. To justify its order in the present case it has selected sentences from various statutes, patched them together and claims the result covers the subject. It cannot point to a clear directive from the legislature authorizing its action. The legislature has clearly defined the duty of utilities to extend services within villages and cities and the authority of the commission to require such extensions. It could, if requested and if it deemed advisable, clearly express the procedure to be followed and the authority of the commission in the matter of extension of service in towns. If the commission deems it advisable and necessary in the public interest to do what it wishes to do in this case, I think it should apply to the legislature for a clear directive rather than to the courts.

Specifically, I cannot agree that amended sec. 1797*m*–74 (now sec. 196.50), Stats., "localized" a franchise or caused franchise benefits to be given on a town basis and. consequently an implied correlative duty arose to provide service anywhere in a town. Such reasoning is not sustained by the *Lodi Case*. The language in *Milwaukee v. Public Service Comm.* (1942), 241 Wis. 249, 5 N. W. (2d) 800, referring to *South Shore Utility Co. v. Railroad Comm.* (1932), 207 Wis. 95, 240 N. W. 784, which the majority now wishes to withdraw, correctly stated the law.

I would reverse the judgment of the circuit court and direct a dismissal of the petition.

I am authorized to state that Mr. Justice FAIRCHILD and Mr. Justice HALLOWS join in this dissent.